Argued December 14, 1921, reargued April 20, affirmed July 25, 1922.

# AUSTIN CO. v. TILLMAN CO.

(209 Pac. 131.)

**Sales—Seller must Deliver Machine Described Before Relying on Buyer's Failure to Return It.**

1. Under a contract to deliver an asphalt mixing plant as described on certain pages of the seller's catalogue, with certain changes in specifications as set forth in a letter from the seller's agent, the seller was obligated to deliver a machine complying with such description before urging that the buyer was precluded from claiming damages for a breach by a provision for the return of the machine if defects developed which the seller was unable to remedy.

**Sales—Seller's Delivery of Article Described not Waived by Buyer's Failure to Reject Article Delivered—Where Repudiation will not Afford Complete Remedy.**

2. A condition precedent or warranty, imposing on the seller the duty to deliver an article like that described in the contract, is not waived by the buyer's failure to reject the article delivered, when the contract is partly executed by him and he has been placed in a situation where repudiation will not afford a complete remedy.

**Sales—Parties may Provide Exclusive Remedy of Buyer for Breach.**

3. Parties to a contract for the sale of personal property may stipulate the buyer's remedy in case of breach of warranty and make it exclusive.

**Sales—Buyer Agreeing to Return Property in Case of Breach cannot Counterclaim for Damages in Seller's Action for Purchase Price.**

4. Where the parties agree that, in case of the seller's breach of warranty, the buyer shall return the property and recover the purchase price, the buyer cannot counterclaim for damages in action for the purchase price, but will be confined to the remedy agreed on, unless he has tendered a return of the property and it has been refused; but, where the buyer's special remedy refers to particular breaches only, he may sue for damages for breaches as to which no special remedy is agreed on.

**Sales—Requirement That Buyer Return Defective Machine Did not Limit Remedies for Failure to Furnish Machine Described.**

5. A provision, in a contract for the sale of an asphalt mixing plant, that the buyer should return the machine and recover the

---

3. Exclusiveness of remedy for breach of warranty provided in contract for sale of machinery, see note in 50 L. R. A. (N. S.) 753.

Divisibility of contract for the sale of an outfit, plant or machinery, see note in 4 A. L. R. 1442.

4. Privilege of returning goods·purchased as bar to claim for breach of warranty, see note in Ann. Cas. 1915D, 1159.

freight paid if the seller was unable to remedy defects developed in testing the machine, did not restrict the buyer's remedies for the seller's failure to furnish a machine like that described.

**Sales—Buyer's Use of Article Unlike That Described in Contract Does not Constitute Waiver of Performance by Seller, Where Accepted Under Protest.**

6. The buyer's use of an article unlike that described in the contract constitutes a waiver of performance by the seller only where it is accepted as a complete performance, not when accepted under protest and objection that it does not fulfill the contract.

**Sales—If Buyer Keeps Article Delivered or Uses It Inconsistently With Seller's Ownership, Without Offering to Rescind, Seller may Recover Contract Price, Less Buyer's Damages.**

7. When the seller tenders an article unlike that described in the contract, the buyer may refuse to accept it, or return it within a reasonable time after delivery and thereby rescind the contract; but if he keeps it or uses it in a manner inconsistent with the seller's ownership, without rescinding or offering to rescind, the seller may recover the contract price less the buyer's damages.

**Appeal and Error—Rejection of Large Pieces of Stone Alleged to have Caused Asphalt Mixer to Break Down Held not Prejudicial to Seller in Action for Price.**

8. In an action for the price of an asphalt mixing plant, which frequently broke down and failed to produce the quantity of material warranted, where plaintiff gave evidence that the breakdowns were due to the passage through the machine of oversized particles of stone, refusal to allow introduction of pieces of stone which a witness claimed he had seen pass through the machine was not prejudicial.

**Appeal and Error—Exclusion of Testimony Subsequently Elicited not Available.**

9. In an action for the price of an asphalt mixer, which failed to produce the quantity of material warranted, plaintiff could not complain of the exclusion of testimony as to what effect wet material would have thereon, where the witness and another later testified as to such effect.

From Clatsop: J. A. EAKIN, Judge.

In Banc.

'AFFIRMED.

For appellant there was a brief over the name of *Messrs. Anderson & Setters,* with an oral argument by *Mr. G. L. Buland.*

---

6. On waiver of stipulated notice of failure of machine to work properly, see note in 1 L. R. A. (N. S.) 142.

For respondent there was a brief over the names of *Mr. Edward C. Judd* and *Messrs. G. C.* and *A. C. Fulton,* with an oral argument by *Mr. G. C. Fulton.*

McCOURT, J.—This is an action by the plaintiff to recover a balance alleged to be due on the purchase price of an asphalt mixing plant delivered by plaintiff to defendant and used by it. Defendant by its answer denied that plaintiff performed the terms and conditions of the contract of sale necessary to be kept and performed by plaintiff before it was entitled to recover the purchase price named in the contract of sale. Defendant alleged affirmatively that the plant delivered was incomplete, defective and old, and was not the one described in the contract and did not correspond to the description or specifications of the plant which plaintiff agreed to furnish defendant and was of insufficient strength and capacity in many of its parts to do the work which plaintiff had represented and warranted it would do; that when the machine was assembled, it protested and objected that the machine did not conform to the contract; that it was worthless as then constructed, and that the failure of plaintiff to supply the plant contracted for was causing defendant large damages; that thereupon the plaintiff admitted that the plant was not as ordered, and undertook to alter, enlarge, strengthen and equip the plant so that it would produce the quantity of material daily which the plant plaintiff had contracted to furnish was warranted to produce, in which undertaking plaintiff failed after efforts exerted by it for a period of more than forty days; that although defendant had used upon its road contracts the material produced by the machine while

plaintiff was endeavoring to make it conform to the contract and had used the machine to complete its contracts after plaintiff had abandoned all attempts to rebuild the machine and make it operate, it did so through necessity and in order to keep down its damages, and alleged further that it did not accept the machine as corresponding to the requirements or description in the contract, but under protest that it did not correspond or conform to the contract, and with express reservation of its right to claim such damages as defendant might suffer as a consequence of the failure of the machine to correspond with the contract.

Defendant also alleged that it had suffered both general and special damages by reason of such failure, and prayed that it have judgment therefor. A trial resulted in a verdict and judgment in favor of the defendant in the sum of $10,145.47. Plaintiff appeals.

Numerous errors are assigned, which are grouped and presented by plaintiff under two propositions: (1) That the contract of sale provided a remedy in case of breach, to wit: A return of the machine and cancellation of the order, which was imperative and not permissive in form, and the remedy thus provided was exclusive, and it was not optional with the defendant to pursue other remedies. (2) That plaintiff was entitled to show in rebuttal, contrary to the ruling of the trial court, that the asphalt mixer was substantially as warranted.

A summary of the evidence will assist in the determination of the questions thus presented. Defendant had entered into three or more contracts with the county of Clatsop, whereby it had undertaken to construct about four miles of paved roads, which im-

provement included the laying of approximately 36,685 square yards of asphalt top pavement, one and one-half inches in thickness, upon a concrete base; in order to lay such pavement with profit, the same must be mixed by an asphalt mixer, of which there are several kinds manufactured; that plaintiff is a manufacturer of road machinery, including mixing plants for various kinds of pavement; a representative of plaintiff, knowing that defendant had the contracts mentioned, solicited defendant to purchase from plaintiff an asphalt mixing plant with which to complete its contracts, representing that plaintiff manufactured a plant entirely suitable to defendant's needs, one of which it had on hand at its factory in Chicago, Illinois, ready for delivery, pursuant to which solicitation, defendant on February 1, 1919, gave to plaintiff an order in writing for an asphalt mixing plant as follows:

"F. C. Austin Company, Inc.,
   "Chicago, Illinois.
"Gentlemen:
   "Please enter order and ship to our address, Astoria, Oregon, one Austin Portable Asphalt Mixing Plant, as described on pages No. 32 and 33 of your catalogue and for which we agree to pay eighty-seven hundred dollars, f. o. b. Astoria, Oregon, payment to be made in cash within ten days after plant is in operation. And in accepting this order it is with the understanding that you guarantee the outfit to be well made, of good material and free from defects and should any defective part or parts develop in six months after arrival at destination you are to furnish the new part or parts free f. o. b. your factory and you are to guarantee the machine when properly operated capable of laying 750 to 1200 square yards of 2″ asphalt top in ten hours; you further agree to send a man at your expense to put

104 Or.—35

the machine in operation and teach us to operate it and stay with the outfit not less than two weeks and we agree to notify you when we are ready to have the machine put in operation, said notice not to be longer than fifteen days after machine arrives at destination, we to furnish all the necessary help to operate the outfit and all material including fuel.

"If for any cause, when testing the machine defects should develop, you are to have a reasonable length of time to remedy defect, but limited to ninety days and if you are not able to remedy the defect and make machine deliver the amount of material as herein provided, we are to return the machine to you and the amount we have paid for freight from your factory to Astoria, Oregon, is to be refunded and this order canceled.

"Yours truly,<br>
"The J. H. Tillman Company,<br>
"By J. H. Tillman, Mgr.<br>
"Hammond, Oregon, or<br>
"931 C. of C., Portland, Ore.<br>
"(Sd.) D. I. Cooper, Sec.

"Witness: W. F. Looker.

"Accepted:

        "_____."

Concurrently with the execution of this order and as part thereof, the following writing was addressed to the plaintiff by its representative and forwarded with the order above set forth:

"F. C. Austin Company, Inc.,

    "Chicago, Ill.

"Gentlemen:

"On order for asphalt mixing plant from the J. H. Tillman Co. make the following changes:

"Omit air compressor but leave agitator pipes in kettle so that they may be connected to boiler if so desired and substitute Kinney or any other good asphalt pump and pipe so that pump agitates or delivers to mixer controlled by three way valve on operating platform piping to be steam jacketed.

"Substitute revolving screen ¾ and ¼ mesh. Make bin capacity not less than 4½ yards, 5 yards preferable, two compartments.

                              "HOWARD COOPER CORP.
                              "By (Signed) D. I. COOPER.
"Expense of these changes are included in selling price."

On April 26, 1919, plaintiff accepted defendant's order and undertook to fill the same, and on that date shipped from Chicago to defendant at Hammond, Oregon, the unassembled parts of a machine, which reached defendant about May 15, 1919. Upon its arrival defendant paid the freight thereon, amounting to $1,466.75, and proceeded to assemble and put together the several parts, many of which did not fit and appeared to be rusty and to have been used. Plaintiff sent an expert, with directions to assist defendant in assembling the machine and to put it in operation. On assembling the parts, it was discovered that the machine did not conform to the description and specifications of the contract in many important particulars, among which were the following:

(1) The machine was not new, but appeared to be old and to have been used.

(2) Oil-heating burners were not placed on the side, but had been at one time, and were changed to rear corners of machine.

(3) Screw conveyor under pug mill not furnished.

(4) Tailing chute would not fit and had never been in place.

(5) Chute from hot elevator to screen would not clear chain driving screen.

(6) Agitation pipes were not left in kettles.

(7) Kinney asphalt pumps did not fit to machine.

(8) Pipe with three way valve omitted, and piping not steam jacketed.

(9) Bin capacity only one and one-half yards, instead of four or five yards.

The defects mentioned and the absolute departures enumerated rendered the machine incapable of producing the quality and quantity of material that plaintiff had agreed the machine furnished by it would produce; plaintiff was unable to furnish another machine to replace the one sent; it was impossible for the defendant to secure an asphalt mixer elsewhere, and its contracts imposed a penalty of $25 per day for delay beyond September 1, 1919.

Upon the complaint of the defendant, made when the machine had been assembled with the assistance of plaintiff's expert, that plaintiff had placed defendant in a position that prevented it from carrying out its construction contracts without incurring heavy losses, plaintiff undertook to alter, add to, rebuild and equip the machine so that it would operate in such a manner as to produce the quantity and quality of material which the machine contracted to be sold was guaranteed to produce, and in order that defendant might be enabled to complete its contracts with the least delay. To this end, experts representing the plaintiff exerted themselves continuously from about June 5, 1919, to July 17, 1919, in which they were actively and energetically assisted by defendant, the latter having expended in that behalf, by the authority of plaintiff, more than $3,000. In spite of the efforts of both the defendant and plaintiff, the machine continually broke down and did not, except upon three or four days, produce the minimum quantity of material called for by the contract. The efforts of plaintiff to conform the machine to that

ordered disclosed that numerous parts thereof were of insufficient strength or insufficient size, and that yet others were faulty in construction or equipment: for instance, to determine the weight of material placed in the bins, it was necessary to multiply the weight which the scales indicated by 3.74. Such material as plaintiff and defendant were together able to make the machine produce was utilized by defendant in carrying out its road contracts.

On July 17, 1919, plaintiff abandoned its efforts to convert the machine shipped into the one ordered, or into a machine that would do the work required by the contract of sale, and demanded that defendant either accept or reject the machine. Defendant declined to do either, whereupon plaintiff, as a coercive measure, ordered the machine shut down, and placed a watchman in charge thereof. Defendant, however, made some alterations and additions to the machine while plaintiff's watchman was in charge, and about July 29, 1919, undertook to operate it again, and finally on August 5, 1919, plaintiff took its watchman off the machine and left it in charge of defendant, and on August 9, 1919, commenced this action. Defendant then continued to use the machine under difficulties similar to those mentioned until September 17, 1919, upon which date it completed its road contracts.

During the time that plaintiff's experts were endeavoring to make the machine operate, the defendant procured, at their direction, numerous parts therefor and made many alterations, changes and additions thereto, all of which were necessary in order to make the machine operate at all.

Defendant throughout protested that the machine did not conform to the machine ordered, either struc-

turally or in producing capacity, and at no time expressed an intention of accepting it as in conformity to the contract, and protested that such use as it made of the machine or of the material produced by it, was occasioned by the necessity which it was under to complete its contracts and keep down its damages, and with reservation of its right to call upon the plaintiff to compensate defendant for such damages as it might suffer from the failure of the plaintiff to supply the machine it had contracted to furnish.

Witnesses for the plaintiff testified that defendant on August 5, 1919, when pressed by representatives of plaintiff to declare whether he would accept or reject the machine, stated: "I have accepted the plant. The plant is mine." This was denied by defendant. Defendant gave evidence that the machine had no value except as junk, for which it was probably worth $400 or $500; that he had expended, with the authority of plaintiff, $3,203.51 upon the machine in materials and labor furnished for replacing defective parts and repairing and altering the machine; that he had paid upon the purchase price, in the form of freight charges, $1,466.75; that if plaintiff had supplied the machine it agreed to furnish, defendant could have performed his contracts in 36.68 days at a cost of $8,867.39; that it required defendant 85 days to lay the pavement called for by his contracts, which actually and reasonably cost defendant $23,-947.11. Plaintiff did not offer any evidence to contradict defendant's evidence of damages.

Noticing first the observation with which plaintiff introduces the argument in its brief, to the effect that the verdict of the jury exhibits a startling result to plaintiff, it may be said, aside from the actual cash

outlay expended by the defendant on the purchase price of the machine, and repairs and additions thereto, less the value of the plant as shown by the evidence, the jury allowed approximately $6,000 for the excess cost of laying the pavement, or between 16 and 17 cents per square yard, which does not appear excessive, in view of the evidence of the difficulties incident to preparing the paving mixture with the machine furnished by plaintiff.

1. A contract for the sale of personal property between the plaintiff and defendant was created by the order which defendant gave, and its acceptance by the plaintiff. By that contract the plaintiff engaged and undertook to furnish and deliver to defendant at Astoria, Oregon, one Austin Portable Asphalt Mixing Plant, as described on pages 32 and 33 of plaintiff's catalogue, with the following changes and substitutions:

"Omit air compressor but leave agitation pipes in kettle so that they may be connected to boiler if so desired and substitute Kinney or other good asphalt pumps and pipe so that pump agitates or delivers to mixer controlled by three way valves on operating platform piping to be steam jacketed.

"Substitute revolving screen ¾ and ¼ mesh. Make bin capacity not less than 4½ yards, 5 yards preferable, two compartments."

The pages of the catalogue, which were made a part of the contract, contained two large drawings or views of the plant, and set forth the dimensions and specifications of the machine, the character of material of which it was made and the manner of its operation and its capacity, together with other descriptive details. The description of the machine to be furnished was followed in the contract by the express warran-

ties set forth therein and the provision for the return of the machine, upon which plaintiff relied to defeat defendant's right to recover damages.

Plaintiff was under obligation to deliver to defendant a machine that complied with the description in the contract; performance of that obligation was a condition precedent, having the force of a warranty after acceptance, with which plaintiff was bound to comply before it was entitled to urge that defendant was precluded from asserting the ordinary remedies available to it for breach of such contract: *Case T. M. Co.* v. *Smith,* 16 Or. 381 (18 Pac. 641); *Morse* v. *Union Stock Yard Co.,* 21 Or. 289, 293 (28 Pac. 2, 14 L. R. A. 157); *Wadhams* v. *Balfour,* 32 Or. 313, 326 (51 Pac. 642); *Puritan Mfg. Co.* v. *Westermire,* 47 Or. 557 (84 Pac. 797); *Mine Supply Co.* v. *Columbia Mining Co.,* 48 Or. 391 (86 Pac. 798).

2. The condition precedent or warranty in the contract for the sale of personal property, which imposes upon the seller the duty to deliver to the buyer an article corresponding to the description in the contract is not waived by failure of the buyer to reject the article when the contract is partly executed by the buyer, and he has been placed by the nonperformance of the seller in a situation where repudiation will not afford him a complete remedy: *Morse* v. *Union Stock Yard Co.,* 21 Or. 289, 293 (28 Pac. 2, 14 L. R. A. 157), and cases cited therein; *Northwestern Cordage Co.* v. *Rice,* 5 N. D. 432 (67 N. W. 298, 57 Am. St. Rep. 563); Mechem on Sales, § 1393.

3, 4. The parties to a contract for the sale of personal property may, by express stipulation in the contract, provide the remedy that shall be pursued by the buyer in case of breach of condition or war-

ranty, and make such remedy the only one available
to the buyer. Where the remedy agreed upon is the
return of the property and recovery of the purchase
price, the buyer will not be permitted to maintain a
counterclaim for damages in an action brought
against him by the seller to recover the purchase
price, but the buyer in such case will be confined to
the exclusive remedy agreed upon, unless he has
tendered a return of the property, and the same has
been refused by the seller: *Feeney & Bremer Co.* v.
*Stone,* 89 Or. 360, 366 (171 Pac. 569, 174 Pac. 152);
24 R. C. L. 250; *Nave* v. *Powell,* 52 Ind. App. 496 (96
N. E. 395); *Consolidated Wagon & Machine Co.* v.
*Barben,* 46 Utah, 377 (150 Pac. 949); *J. A. Fay &
Egan Co.* v. *Crowell,* 182 N. C. 532 (109 S. E. 562);
*Wilson* v. *Nichol & Shepherd Co.,* 139 Ky. 506 (29
Ky. Law Rep. 1128, 97 S. W. 18).

In the case of *Feeney & Bremer Co.* v. *Stone,* 89
Or. 360 (171 Pac. 569, 174 Pac. 152), Mr. Justice
HARRIS said:

"Generally speaking, the parties to a contract for
the sale of personal property have a right to agree
that a defined remedy shall be exclusive; but in the
absence of language evidencing an intention to make
a given remedy, like the one in question here, exclu-
sive of all others, it is treated as cumulative and per-
missive rather than exclusive and mandatory; and
hence the buyer is usually permitted to avail him-
self of the special remedy; or, if he chooses, he may
accept the property and recover damages for a breach
of the warranty."

In the contract under consideration this language
was used: " * * we are to return the machine to
you and the amount we have paid for freight from
your factory to Astoria, Oregon is to be refunded and

this order canceled," indicating an intention of the parties to create an exclusive remedy in favor of the defendant, in the event of a breach to which the language quoted referred.

Where, however, the special remedy in favor of the buyer refers to particular breaches only, the buyer still has his remedy in damages for breaches as to which no special remedy is agreed upon: 24 R. C. L. 251.

5. Plaintiff contends that the provision for a return of the property referred expressly to all the warranties contained in the contract of sale, and cannot therefore be deemed to except from its operation any one of the vendor's warranties.

That provision obviously was intended to protect plaintiff against liability for defects and imperfections that might develop when the machine was placed in operation, and which were not discovered previously, in spite of the exercise of reasonable care in the selection of materials and in the manufacture and construction of the machine.

The language of the stipulation does not refer to defects or failure of warranty that may arise subsequent to a test, for which provision is made in the contract, nor to failure of the obligation of plaintiff to furnish a machine corresponding to the description in the contract, and does not restrict defendant's remedies or define the same in case of breach in those particulars. Substantial performance by plaintiff of the undertaking of the latter to furnish a machine that corresponded to the description in the contract was contemplated and required before the obligation of defendant to return the machine became active as a limitation upon defendant's ordinary legal reme-

dies accruing upon account of plaintiff's failure to deliver the machine described in the contract.

Defendant agreed that if plaintiff delivered to it a machine as specified and described in the contract and which required a test to disclose that it was not what it appeared to be, defendant would, when the required test developed incurable defects, return the machine and terminate the contract. The conditions upon which the obligation of defendant under that agreement were to become active were not present until the plaintiff delivered to defendant a machine corresponding to the description in the contract, and until that time the obligation of the defendant did not arise or accrue.

For defects that developed in a machine that answered the description in the contract, while the same was being tested and which plaintiff was unable to remedy, and make the machine produce the quantity of material warranted, the return of the machine was the only remedy available to defendant; but for failure of plaintiff to perform its contract in other respects, there was open to defendant the ordinary remedies afforded by law in like cases for the breach of contracts for the sale of personal property. The provision limiting the remedy of defendant to a return of the machine was for the benefit of the plaintiff in respect to the sale of a machine manufactured by it, and should not be extended to embrace situations not clearly comprehended by its language.

It was established by the evidence that the machine delivered failed in substantial and vital particulars to correspond with the description in the contract; that it was apparent, without any testing, that it did not have the warranted capacity and was insufficient, mechanically and structurally, all of which was ad-

mitted by plaintiff before attempting to test or operate the machine; that plaintiff altered and strengthened the machine, and tested and operated it, not for the purpose of developing possible hidden defects, but for the purpose of rendering a machine confessedly different from, and inferior to, the one ordered, capable of producing the character and quantity of material the one ordered was designed to produce. The evidence also strongly tended to show that the attempts to strengthen the machine and enlarge its capacity resulted in failure, and at the same time imposed expense upon defendant and involved it in losses that would have been largely increased by repudiation of the contract and return of the machine.

Plaintiff was not entitled to insist that defendant was limited in respect to its remedy by the terms of the contract, unless it first performed the conditions precedent upon its part, and which were essential to impart force and operation to the limitation upon defendant's ordinary remedies: *Mine Supply Co.* v. *Columbia Mining Co.*, 48 Or. 391 (86 Pac. 798); *Puritan Mfg. Co.* v. *Westermire*, 47 Or. 557 (84 Pac. 797); *Case T. M. Co.* v. *Smith*, 16 Or. 381 (18 Pac. 641).

"Conditions precedent on the part of the seller to the duty of the buyer to make a return must of course be performed; otherwise no duty is imposed on the buyer to make the return." 24 R. C. L. 252.

6. Plaintiff urges that use of the machine by defendant and the resulting acceptance, constituted a waiver of performance by plaintiff. In actions to recover the purchase price, under the circumstances disclosed by the evidence, the result contended for only arises where delivery is made of an article that does not meet the description in the contract, but is

accepted as complete performance of the seller's obligation under the contract, and does not arise when such delivery is accepted under protest and objection, as in this case, that it does not fulfill the contract.

7. The buyer may, when the seller as performance of the contract, tenders an article which does not correspond to the description called for by the contract, refuse to accept it, or after delivery, if within a reasonable time, he may return the article and thereby rescind the contract, but if he retains possession of the property, or uses the same in a manner inconsistent with ownership in the seller, without rescinding or offering to rescind, the latter is entitled to recover the contract price, less any damages the buyer may have sustained by reason of a breach of the contract by the seller: *Steiger* v. *Fronhofer*, 43 Or. 178, 183 (72 Pac. 693); *Mine Supply Co.* v. *Columbia Mining Co.*, 48 Or. 391 (86 Pac. 798).

Defendant's right to claim damages was not taken away by the provision for return of the machine; the conditions precedent to the application and operation of that provision were not performed by plaintiff: *Mine Supply Co.* v. *Columbia Mining Co.*, 48 Or. 391 (86 Pac. 798).

In the case last cited Mr. Chief Justice BEAN said:

"There is also a provisions in the contract that the plaintiff should not be responsible for repairs or alterations unless made with its written consent, nor liable for damages on account of delays caused by such repairs or alterations. This stipulation can only apply in case plaintiff complied with its contract. If it did not furnish a mill of the kind and description specified in the contract, and defendant was damaged by reason thereof, it cannot shield itself from liability behind a stipulation in a contract with which it did not comply."

8. Plaintiff in its case in chief gave evidence that the failure of the machine to produce the minimum quantity of material named in the contract was due to the inexperience and lack of skill of defendant's employees, and to an excess of moisture in the material used by defendant, and attributed the frequency with which the machine broke down to the same want of experience and lack of skill of defendant's employees, together with the passage through the machine of oversized particles of stone. This evidence was contradicted by defendant. On rebuttal plaintiff called the witness, who in its direct case had given the evidence that large stone was permitted to go through the machine, who produced several pieces of stone, which the witness claimed he had seen pass through the machine while defendant was operating the same. The pieces of stone were offered in evidence, but the court refused to allow their introduction, upon the objection of the defendant that it was not proper rebuttal evidence. Counsel for plaintiff stated that the evidence was offered to show that the machine was substantially as warranted. Without determining the competency or materiality of the evidence for the purpose for which it was offered, it is clear that its rejection had no perceptible influence upon the result of the case.

9. Plaintiff called in rebuttal one John L. Hill as a witness, and asked him the following question:

"Q. Are you able to state what effect, if any, wet material * * containing more than 2 per cent moisture would have on an asphalt mixing plant?"

The court sustained an objection to the question interposed by the defendant on the ground that the evidence sought to be elicited by the question was not

proper rebuttal evidence. The witness later, however, testified that if the material · was wet, water going into the tank where the asphalt was being heated, would cause all the asphalt to boil out of the kettle and would cut down the capacity considerably. (Tr., pp. 517, 518.)

Another witness called by defendant testified upon the same subject in effect. Rain or water or condensed steam getting into asphalt will have the effect of making the asphalt bubble and foam and become spongy and will not adhere to the stone. (Tr., p. 539.)

Plaintiff having succeeded in getting before the jury the evidence which he sought to elicit by the question to which an objection was sustained, cannot now complain of the previous ruling of the court.

This disposes of the contentions made by plaintiff upon this appeal, and it follows that the judgment of the Circuit Court is affirmed.          AFFIRMED.

BROWN, HARRIS and RAND, JJ., concur.

McBRIDE, J., concurs in the result.

BEAN, J., Concurring.—To the plaintiff's suit for the sum of $7,233.25 for the purchase price of one Austin portable asphalt mixing plant after deducting $1,466.75, which defendant paid as freight, the defendant, after denying many allegations of the complaint, pleads in effect that the mixing plant ordered by defendant from plaintiff did not correspond with the one described in the order, and in the catalogue of plaintiff (pages 32 and 33) referred to in the order; that the plant was shipped from Chicago, Illinois, and defendant had no opportunity to inspect the

same; that it was received at Astoria, Oregon, about May 15, 1919, in a knockdown condition, so that it could not be then inspected; that as soon as it could be assembled about May 31st plaintiff ascertained that the mixing plant was not a new or complete plant, nor were the machinery and appliances belonging thereto new, but were old and rusted and had been used previously and substantially worn out, and many of the parts would not fit; that the plant was of no value whatever and could not be assembled without additional parts; that it was not provided with a revolving screen three-fourths and one-fourth mesh with a bin capacity of not less than four and one-half yards of two compartments for the holding of sand and gravel; that no such equipment was with the plant so delivered; that the plant did not in any way correspond with the one described in the order and catalogue, but the plaintiff at the time the plant was delivered represented and guaranteed to the defendant that such plant was the plant contracted for and was in first-class condition; that it was agreed that defendant would assemble the plant; that plaintiff would make the same accordingly as required by the contract and place it in first-class condition and make it operate as contracted and would forthwith furnish the screens and bin and otherwise make it fully correspond to the contract and guaranty, all of which was believed and relied upon by defendant; that in order to assemble the plant it was necessary, by reason of the failure of plaintiff to furnish a complete plant, to purchase a large amount of additional appliances, mend broken parts and make parts fit which would not fit as delivered, all of which the defendant did under the advice and direction of plaintiff; that plaintiff furnished an alleged expert to

operate the plant and teach defendant to do so, and in this manner it was attempted to operate the plant on the first of June of that year, in laying asphaltic top on roads; that the plant could not be operated by reason of many inherent defects and faulty and too light construction, and the plant became and was a failure, but plaintiff insisted that it could and would make the plant work properly and fulfill the contract of warranty; that defendant expended $3,203.61 in purchasing additional parts and endeavoring to put the plant in workable condition which it would not have been required to pay had the plant been as contracted for; and that when properly operated the plant could not be made to lay 750 square yards of two-inch asphaltic top or its equal 1,000 square yards of one and one-half inch asphaltic top in ten hours, the best it would average being 433.7 square yards of one and one-half inch asphaltic top or its equal 325.275 square yards of two-inch asphaltic top, and for this reason it required a longer time to lay the asphalt and defendants are thereby damaged in the sum of $15,097.72. As a counterclaim to plaintiff's complaint defendant demands such damages and the expenses of repairs and extra machinery together with the freight charge making a total of $19,750.08. The reply puts in issue the material portions of the answers. Upon the trial a verdict and judgment were rendered in favor of defendant for the sum of $10,145.47.

It appears from the record that the plaintiff sent two different mechanics to endeavor to put the plant in working order, who made efforts so to do until about August 15, 1919. The agents of plaintiff who had charge of the matter endeavor in their testimony

to minimize the defects and make excuses for the failure of the plant to do the work. Their correspondence with their superior, the F. C. Austin Co., indicates that there was a failure of the mixing plant to do the work guaranteed in the contract. By accepting the order of defendant for the plant the plaintiff guaranteed

"the outfit to be well made, of good material and free from defects and should any defects in any part or parts develop in six months after arrival at destination you are to furnish the new part or parts free f. o. b. your factory and you are to guarantee the machine when properly operated capable of laying 750 to 1,200 square yards of 2″ asphalt top in ten hours; you further agree to send a man at your expense to put the machine in operation and teach us to operate it and stay with the outfit not less than two weeks and we agree to notify you when we are ready to have the machine put in operation, said notice not to be longer than fifteen days after the machine arrives at destination, we to furnish all the necessary help to operate the outfit and all materials including fuel."

This language of the contract from a form of plaintiff's is a plain, absolute and complete general warranty on the part of plaintiff with the defendant that the machine sold by it would be as described in the part of the contract above quoted. Immediately following this general warranty in the contract there is superadded what may properly be termed a special warranty as follows:

"If for any cause, when testing the machine defects should develop, you are to have a reasonable length of time to remedy defects, but limited to ninety days and if you are not able to remedy the defect and make machine deliver the amount of material as herein provided, we are to return the machine to you

and the amount we have paid for freight from your factory to Astoria, Oregon, is to be refunded and this order canceled.''

The plaintiff was engaged in manufacturing and selling Austin portable asphalt mixing plants. In construing the warranty, the position of the parties, the general conditions and surrounding conditions should be taken into consideration. The last part of the stipulation quoted, which we will term the special warranty, refers more particularly to the remedy of defects that might develop in testing the machine as to some parts thereof which could in the ordinary course of such business be replaced and remedied, and to the time for making such ordinary adjustments and to the testing of the mixer, and not to the general make of the machine, or the material therein or its durability. The contract does not contain a clause to the effect ''that a certain specified use of the machine will constitute conclusive evidence that it satisfies the warranty,'' frequently inserted in such contracts. The warranty is positive and unequivocal that the outfit is to be ''well made, of good material and free from defects.'' Plaintiff guaranteed ''the machine when properly operated capable of laying 750 to 1,200 square yards of 2'' asphalt top in ten hours.'' The contract contains no stipulation that the use of the machine for a certain time or failure to return the same shall be deemed an acceptance of the plant, or indicate that it was the intention of the contracting parties that in the event the machine failed to do the work guaranteed the return thereof to plaintiff and the repayment to defendant of the freight money should be the exclusive remedy of defendant. Taking the contract by its four corners it

does not show that the parties intended to agree that a rescission or return of the machine should be the only remedy of defendant in case the mixing plant did not do the work guaranteed, or did not comply with the contract. It is conceded that notice of the failure of the mixing plant to meet the requirements was given to plaintiff and acted upon by it. The contract provided that payment therefor was to be made "within ten days after plant is in operation" and also, "should any defects in any part or parts develop in six months after arrival at destination you are to furnish the new part or parts free." Ninety days' time is the only limit for the plaintiff to remedy defects. All the particulars specified in the contract considered together do not express an intent to limit the warranty to the time of acceptance of the machine. The last quoted clause is not a limitation of defendant's remedies.

The testimony tended strongly to show that upon the delivery and assembling of the mixer it was discovered not to be the machine described in the contract, differing from the one ordered in the following respects:

(a) The machine furnished was old and second hand, rusted and worn out.

(b) Oil-heating burners were not placed on the side but had been at one time, and were changed to rear corners of machine.

(c) Screw conveyor under pug mill not furnished; had to hoe mixture from a chute into trucks.

(d) Tailing chute would not fit and had never been in place.

(e) Chute from hot elevator to screen would not clear chain driving screen; new one fitted.

(f) Pug mill was driven by chains, constantly breaking as they appeared to be too light for the load they were transmitting.

(g) Air compressor omitted, but agitation pipes were not left in kettles.

(h) Kinney asphalt pumps were shipped, but did not fit to machine, or pipe with three way valve, nor steam jacket piping. Defendant had to place extra man to dip asphalt.

(i) Bin capacity was only 1½ yards instead of 4½ or 5 yards, thereby limiting screen to such small size that it was practically worthless for intended purpose; also necessitated hand proportioning of mix.

(j) A direct weighing scale was furnished but bin was hung so that it was useless, necessitating dividing weight desired by 3.74, i. e., if you had 3.74 pounds in measuring box, it would only register 1 pound on the scale.

The plaintiff, knowing that defendant had entered into contracts with Clatsop County to construct certain highways therein, necessitating the laying of fully 36,685 square yards of one and one-half inch asphaltic top, and that none of this top had been laid and defendant had no machine with which to lay this material, unless it employed the one in question, urged defendant to try out this machine, promising that plaintiff would make it comply fully in all respects with the one ordered, and that plaintiff would furnish and install new for the worn parts and reconstruct the machine in all respects without cost to defendant. Thereupon, plaintiff undertook to carry out these suggestions, but after operating the machine for about forty days wholly failed, and gave it up.

The language of Mr. Justice Harris in *Feeney &
Bremer Co.* v. *Stone,* 89 Or. 360 (171 Pac. 569, 174
Pac. 152), is applicable to the present case and places
the State of Oregon in the class with the great weight
of authority holding as in the Feeney & Bremer case.
In that case it was "expressly guaranteed" that if
the hoist "would not stand up to the work and ac-
complish the purpose of the defendant," and that if
the hoist would not work plaintiff would make the
same do so, and if the machine would not work the
plaintiff would charge the defendant nothing there-
for.  At page 366 of the opinion it is said:

"The plaintiff argues that the parties have by the
agreement, alleged in the answer, limited the de-
fendant's remedy for a breach of the warranty to
the right to decline to pay for the machine, and that,
therefore, Stone is not entitled to recover damages
for a breach of the warranty.  If by the stipulation
'the plaintiff would charge the defendant nothing
therefor' is meant that the defendant could refuse to
accept the hoist, then the stipulation added nothing
to the rights of the defendant since the law gave him
the right to rescind the contract and return the ma-
chine within a reasonable time after delivery, for it
must be remembered that the parties contracted for
a machine which was not yet in existence when they
made the agreement: *Steiger* v. *Fronhofer,* 43 Or. 178,
183 (72 Pac. 693); *Lenz* v. *Blake,* 44 Or. 569 (76 Pac.
356).  If, on the other hand, the parties intended to
agree that the defendant could keep the hoist without
paying for it if it did not work, it constituted an ad-
ditional rather than an exclusive remedy.  Generally
speaking, the parties to a contract for the sale of
personal property have a right to agree that a de-
fined remedy shall be exclusive; but in the absence of
language evidencing an intention to make a given
remedy, like the one in question here, exclusive of
all others, it is treated as cumulative and permissive

rather than exclusive and mandatory; and hence the buyer is usually permitted to avail himself of the special remedy; or, if he chooses, he may accept the property and recover damages for a breach of the warranty. There is nothing to indicate that the parties intended that the right not to pay should be the exclusive remedy.''

Therefore it has become the settled law in this state that in the absence of language evidencing an intention to make a given remedy exclusive of all others it is treated as cumulative and permissive: *Feeney etc.* v. *Stone, supra.*

In a leading case, *Douglass Axe Mfg. Co.* v. *Gardner,* 10 Cush. (Mass.) 88, the wording of the contract was almost identical with the contract involved in the present case. Defendant agreed

''to deliver to the plaintiffs one hundred tons of iron as soon as convenient within one month, warranted to be suitable for the purpose of manufacturing at the plaintiff's works, and at least as good as the last sent them * * . If it was not, to be returned at defendant's expense.''

In construing this writing Mr. Justice METCALF says:

''When personal property is sold with warranty, the buyer is entitled, although he does not return it to the seller, nor give him notice of its defective quality, to maintain an action for breach of the warranty; or, if an action is brought against him by the seller for the price, he may prove the breach of warranty, either in diminution of damages, or in answer to the action, if the property be of no value: *Fielder* v. *Starkin,* 1 H. Bl. 17; *Poulton* v. *Lattimore,* 9 Barn. & C. 359; *Pateshall* v. *Tranter,* 3 Adolph. & Ellis, 103; 2 Smith's Lead. Cas. 15, 17. * * When a seller, in addition to a warranty of property, makes a promise to take it back if it does not conform to the

warranty, we cannot hold that such superadded promise rescinds and vacates the contract of warranty. We are of opinion that in such case, the buyer has, if not a double remedy, at least a choice of remedies, and may either return the property within a reasonable time, or keep it and maintain an action for breach of the warranty."

See Williston on Sales, § 607, and *Masillon Engine Co.* v. *Shirmer,* 122 Iowa, 699 (98 N. W. 504).

In the case of *Wander* v. *Robertson,* 75 Iowa, 585 (39 N. W. 905), we find:

"But when plaintiffs [vendors] neglected to perform the undertaking on their part, the performance of which was precedent to defendant's right to avail himself of the remedy provided by the contract, its remedial provisions were abandoned, and he could avail himself of such remedies as would have been open to him, if that condition had never been embodied in the contract."

*Hart-Parr Co.* v. *Duncan,* 75 Okl. 59 (181 Pac. 288, 4 A. L. R. 1434), involved a sale of a traction engine with a warranty. The stipulation ended thus:

"It is further mutually understood and agreed that the use of said engine after the expiration of the six days named in the above warranty shall be conclusive evidence of the acceptance of the same, and full satisfaction to the undersigned, who agrees thereafter to make no other claim on the Hart-Parr Company. * * *"

On delivery several experts were unable to make the engine do the work as per the warranty. The court held that under these circumstances, there was no rule of law, at least, none recognized by that court, that would deny the vendee the provisions of the warranty and force him to take a worthless engine and pay $2,785 for it.

In the case of *Kimball & Austen Mfg. Co.* v. *Vroman,* 35 Mich. 310 (24 Am. Rep. 558), at page 560, the opinion reads:

"But if the contract itself provided for a return of goods and did not at the same time provide that on such return the parties should be placed *in statu quo,* with no claims for further redress, any doctrine that holds the warranty discharged holds that parties cannot make such agreements as they see fit to make for lawful purposes."

A reference to 24 R. C. L., page 251, Section 529, and note to *Detwiler* v. *Downes,* 50 L. R. A. (N. S.) 753 (119 Minn. 44, 137 N. W. 422), shows that the ruling in *Feeney etc.* v. *Stone* is in line with the weight of authority. To the same effect is 2 Mechem on Sales, Section 1801, where it is said:

"Usually, however, such a remedy will be an optional one, and the buyer at his election may either return the goods or keep them and have such remedy as the law provides."

An express warranty such as contained in the contract in question survives acceptance, and by the great weight of authority gives the buyer a remedy notwithstanding the defects were visible or open to discovery at the time they were received. The buyer may reject them, but he is not compelled to do so. By accepting the goods the buyer may lose his right subsequently to reject them, but he does not thereby necessarily lose his right to rely upon the warranty: 2 Mechem on Sales, § 1395.

*Minnesota Thresher Mfg. Co.* v. *Hanson,* 3 N. D. 81 (54 N. W. 311), holds thus: Retention and use of property without notice of defects, under general warranty, by preponderance of later and better authorities "affects only right to rescind. The buyer

may still rely on the breach of warranty to defeat recovery in whole or in part.''

"The right to rescind a contract of sale never operates to annul a warranty of the thing sold, unless there is a provision that the rescission is the only remedy, * * . The two remedies can coexist, and the purchaser has her option between them." *Shupe & Co.* v. *Collender,* 56 Conn. 489 (15 Atl. 405, 1 L. R. A. 339).

The warranty of the manufacturer with respect to the engine merely permits the buyer to return it. It does not provide that a failure to return shall constitute a waiver of the warranty: *Hauss* v. *Surran,* 168 Ky. 686 (182 S. W. 927, L. R. A. 1916D, 997). See, also, note to *Crouch* v. *Leake,* 50 L. R. A. (N. S.) 774.

A contract of sale may fix conditions precedent to any rights under the warranty if they are reasonable, and a failure by the buyer to comply with such conditions is fatal to his remedy for breach of the warranty, whether he institutes an action himself or sets up the breach in defense to an action for the purchase price: *W. F. Main Co.* v. *Griffin-Bynum & Co.,* 141 N. C. 43 (53 S. E. 727); note, 50 L. R. A. (N. S.) 753. But where the warranty of a machine is absolute and unconditional, the purchaser's right to rely upon it is not affected by an agreement to notify the seller so the latter may have an opportunity to remedy the defect; nor does it depend upon any offer to return the machine for breach of the warranty. The purchaser has a right of action for his damages, or when sued upon notes given for the purchase price he may counterclaim the amount of his damages: *Gaar, S. & Co.* v. *Patterson,* 65 Minn. 449 (68 N. W. 69, 50 L. R. A. (N. S.) 754, note).

Usually these contracts contain: First, a general warranty that the machine is made of good material, is durable, and will do the work it is intended for as well as any other machine. Then there is what may properly be termed a special warranty following this general warranty, that if, upon starting, the machine fails to work well, the purchaser shall give notice, and the seller will make it do good work, and if he does not the purchaser shall return the machine or defective parts, and another will be substituted by the seller or he will return the purchase money paid or notes representing the purchase price. There is also frequently a clause following these provisions, to the effect that a certain specified use of the machine will constitute conclusive evidence that it satisfies the warranty. The rule is well settled that if a contract for the sale of a machine contains a provision authorizing the purchaser to return it for breach of warranty, that it is optional with the purchaser to pursue this remedy. The remedy is construed to be cumulative. The purchaser may have recourse to it, or he may retain the machine and depend upon his ordinary remedies for breach of warranty unaffected by this provision: 50 L. R. A. (N. S.) 755, 769, notes.

A provision in a contract for the sale of a machine, that the purchaser may return same for a breach of warranty, does not preclude the purchaser from keeping the machine and suing upon the warranty: *McGill* v. *Hall* (Tex. Civ. App.), 96 S. W. 132, 50 L. R. A. (N. S.) 769.

In *Tunell* v. *D. M. Osborne & Co.,* 31 Minn. 343 (17 N. W. 944), a provision that

"all our machines are warranted to be well built, of good material, and capable of cutting, if properly

managed, from 10 to 15 acres per day. If, on start-
ing a machine, it should in any way prove defective,
and not work well, the purchaser shall give prompt
notice to the agent of whom he purchased it, and
allow time for a person to be sent to put it in order.
If it cannot then be made to do good work, the defec-
tive part will be replaced or the machine taken back
and the payment of money or notes returned. Keep-
ing the machine during harvest, whether kept in use
or not, without giving notice as above, shall be
deemed conclusive evidence that the machine fills the
warranty,''—

has been held not to impose upon the purchaser
the duty to return the machine in order to be en-
titled to recover damages for a breach of warranty,
but it is sufficient for this purpose if he gives the
notice specified. It is said that

"the warranty was an absolute obligation of the ven-
dors, respecting the quality and capacity of the ma-
chine. The sale was perfected, and the title of the
property transferred, although the vendor promised,
and assumed the obligation in favor of the vendee,
to rescind the sale in the event specified. The con-
tract did not obligate the vendee to return the prop-
erty nor to rescind the sale. It does not provide that
the sale should be rescinded upon the contingency
specified; nor does it express any intention of the
parties that the remedy to which the vendee might
become entitled for a breach of the express warranty
should be confined to rescinding the sale. The ven-
dee might insist upon the performance of the prom-
ise of the vendor to replace the defective part or to
take back the property, or at his election, he might
waive it, and recover damages for the breach of the
warranty."

To the same effect are *D. M. Osborne & Co.* v.
*Marks,* 33 Minn. 56 (22 N. W. 1), and *D. M. Osborne
& Co.* v. *McQueen,* 67 Wis. 392 (29 N. W. 636, 50

L. R. A. (N. S.) 771, note). It will be noticed that in the D. M. Osborne & Co. cases the language of the warranty is much stronger in favor of the seller than in the case at bar.

A provision in a contract for the sale of a horse, that the sellers agree to replace him with another horse on delivery at their stables, without cost to them, of the horse originally sold, if in as sound and good condition as when purchased, does not limit the purchaser to the remedy therein provided, but he may waive same, and recover damages for the breach of the warranty: *Eyers* v. *Haddem,* 80 Fed. 648. See *Kemp* v. *Freeman,* 42 Ill. App. 500, and *Cook* v. *Lantz,* 116 Ill. App. 472.

In *Main* v. *Dearing,* 73 Ark. 470 (84 S. W. 640), a provision in a contract for the sale of jewelry by a manufacturer to a retailer, for the return of any article failing to wear satisfactorily, together with a provision that the purchaser waives all right to claim failure of consideration, or that the goods are not like the sample, or not according to the order, unless he has exhausted the terms of the warranty, is held to have no application where the goods are shipped to the purchaser without inspection by him, and upon arrival and inspection they are found to be unmerchantable. To the same effect as to a similar contract is *Main* v. *El Dorado Dry Goods Co.,* 83 Ark. 15 (102 S. W. 681, 50 L. R. A. (N. S.) 786, note).

Plaintiff's complaint shows that the mixer was shipped to defendant with bin one and one-half yards instead of four and one-half or five yards and with chain drive instead of shaft and with the burner changed, but it claims the defendant accepted and used the plant.

Quoting from and applying the opinion in *Mine Supply Co.* v. *Columbia Mining Co.,* 48 Or. 391 (86 Pac. 798), at page 395:

"If, as the defendant alleges and the testimony tended to show, the mill furnished was not the 'latest improved,' but an old-style mill, there was a breach of the contract, for which the plaintiff is liable in damages: *Steiger* v. *Fronhofer,* 43 Or. 178 (72 Pac. 693); *Lenz* v. *Blake,* 44 Or. 569 (76 Pac. 356).

"The fact that it made an effort to use and operate the mill was not a waiver of its right to damages for such breach: *Norton* v. *Dreyfuss,* 106 N. Y. 90 (12 N. E. 428); *Northwest Cordage Co.* v. *Rice,* 5 N. D. 432 (67 N. W. 298, 57 Am. St. Rep. 563)."

The latter case shows that if plaintiff did not comply with its part of the contract defendant is not bound by the limitation in question, if the latter clause of the order is considered as such limitation. We quote further from the language of Mr. Justice R. S. Bean in that case, page 396, thus:

"There is also a provision in the contract that the plaintiff should not be responsible for repairs or alterations unless made with its written consent, nor liable for damages on account of delays caused by such repairs or alterations. This stipulation can only apply in case plaintiff complied with its contract. If it did not furnish a mill of the kind and description specified in the contract, and defendant was damaged by reason thereof, it cannot shield itself from liability behind a stipulation in a contract with which it did not comply."

In support of plaintiff's contention much reliance is placed upon the case of *Fay & Eagan Co.* v. *Crowell,* 182 N. C. 532 (109 S. E. 562), and the case of *Consolidated Wagon & Machine Co.* v. *Barben,* 46 Utah, 377 (150 Pac. 949). In the first case, the con-

tract of warranty of mill machinery sold contained the following:

"That a retention of the property forwarded, after 30 days from its arrival at destination, shall constitute a trial and acceptance, be a conclusive admission of the truth of all representations made by or for the consignor, and a fulfillment of all its contracts of warranty, express or implied."

The second was a case where a written contract of sale contained a warranty providing that if after a trial of five days the machinery should fail to fulfill the warranty written notice should be given to the seller and also the agent from whom the machinery was received, and that failure to make such trial or give such notice should be conclusive evidence of due fulfillment of warranty. The warranties in the two cases were entirely different from the one in the case at bar.

The remedy accorded to defendant by the contract to return the machine was permissive or cumulative, and if defendant did not avail itself of the benefit thereof and return the mixer this would not deprive it of a remedy to counterclaim damages for a breach of the warranty. The effort of the defendant during the summer of 1919, through two mechanics whom it sent (and it discussed obtaining an expert from San Francisco) to put the mixer in shape, was a strong request for defendant to retain the machine for at least ninety days after it was attempted to be, put in operation. Plaintiff was entitled to that time to remedy the defects. It commenced this action before the expiration of the ninety days and before it had made the mixer do the agreed work.

The testimony indicates, and the jury must have found, that the mechanism of the plant was lacking

in ability properly to mix the material for the pavement, necessitating the labor of a man with a shovel to stir up and mix the ingredients. It also strikingly failed to do the required amount of work, was weak in parts, and inefficient. The mixer was worth- less, a mere "joke." As testified by Mr. Olson, agent and expert of plaintiff (Trans., p. 109), the make of the plant was "not a good job." An attempt was made by the parties to settle, and there were differences and a dispute in regard to the acceptance of the plant. How could defendant be required to return a machine upon which it had expended at plaintiff's request over $3,000 in parts and labor in order to make it conform to contract? In order to rescind and cancel the order the parties should, as far as possible, be placed in the same situation they were in when the contract was made. The defendant, when it ordered the mixing plant, had road contracts to complete and desired the machine for that purpose. It relied upon the warranty, which is a distinct, absolute unconditional warranty that the mixer would be the kind and do the work specified therein. Without such a warranty plaintiff could not reasonably have expected to sell the machine under the circumstances portrayed in this case. The warranty is not limited to ten days or until acceptance of the apparatus, but is general and survives the acceptance.

It appears from the record that the machine was built over by a salesman of plaintiff during the winter-time and changed in essential particulars from the one described in the contract. Plaintiff should not be permitted to foist on to the defendant a worthless machine.

It is admitted by the parties that the order as changed (Exhibits "B," "C," and "D") was ac-

cepted by plaintiff when the machine was shipped
April 26, 1919. A few days after the machine ar-
rived, in response to a telegram sent at the request
of defendant by Howard-Cooper Co., the general
sales agent of plaintiff in Oregon, Mr. A. N. Skill-
man a representative of plaintiff came to assist in
setting up and making the plant work. Later the
plaintiff sent a Mr. Olson to Astoria for the same
purpose.

Mr. A. N. Skillman, a witness for plaintiff, testified
among other things that he directed Mr. Tillman to
put in a screen; that Mr. Tillman contended he
wanted a larger bin with storage capacity of four
and one-half or five yards, which necessitated a large
expense, "I told him it could not be done, I had no
authority to do anything of that kind." He was
there three or four weeks, and states that they
started the plant on the second or third of June;
that it ran fairly. He credits the failure of capa-
city of the machine to the dampness in that locality,
and the kind of material used. On cross-examina-
tion he stated that he sent the following telegram
"to F. C. Austin Company, Postal Railway Exchange
Bld., Chicago, Ill.: 'I understand have authority to
put plant into working condition. It puts Mr. Till-
man in bad under present conditions. Ship 100 links
for 103 drive chains. A. N. Skillman.' "

This was about two or three weeks after he ar-
rived.

Mr. Eugene Olson as a witness for plaintiff testi-
fied in part that he arrived at Astoria, Oregon, as
a representative of plaintiff July 11, 1919, to do what
he could to "get the plant in operating condition,"
and did "everything possible that could be done";
that Tillman complained of many things that had

104 Or.—37

"gone wrong with the plant," and that "the plant does not deliver the minimum amount of material called for in the contract." Olson asked Tillman whether he wanted to accept the plant or reject it, and after that authorized changes to be made in the plant. On July 18th, plaintiff wired Olson from Chicago to take possession of the plant and "discontinue laying asphaltum immediately. Put a watchman on plant." This was done. The plant was not started again until about July 29th. Olson stated that Tillman wanted many changes in the plant.

It appears the machine would run for a little while and then there would be some trouble. Mr. Olson pointed out many things wherein the plant differed from the specifications of the contract. Olson stated on cross-examination, "I remained here until August 15th," and that the plant was operating all right up to the time it was shut down July 18th. Tillman was allowed to operate the plant again July 29th, until about September 17th. The watchman was still there at the plant.

This action was commenced August 9, 1919. The testimony is voluminous. It tended to show that at the time this action was commenced the mixer had not been put in condition to do the work according to the contract; that it was not as described in the contract and never was put in successful operation; that it could not be made when properly operated to do the work according to the warranty; that it was continually breaking down through inherent weakness; that it was not "well made of good material or free from defects," but was an old made over machine and practically worthless; that the plaintiff promised to remedy the defects and make the machine work properly, but failed to do so; and that on

account of the failure of plaintiff to comply with its part of the contract defendant was damaged to the full amount of the verdict; and the motion of plaintiff for a nonsuit as to defendant's counterclaim was properly denied.

If the clause of the contract should not be construed according to the view of the writer but should be held to be mandatory and not permissive, in the requirement for defendant to return the machine, then there are two reasons why defendant was not required to return the machine before the commencement of this action, viz.: (1) Plaintiff promised and undertook to remedy the defects and was entitled to ninety days to do so, which time had not expired when the action was begun; plaintiff had not put the machine in condition to do the required work, but had continually been trying to do so, and encouraged defendant to believe that it would. (2) Defendant, at the special instance and request of plaintiff, had expended over $3,000 for new parts and attachments for the machine, and labor in an effort directed by plaintiff to remedy the defects in the mixer; and should not be required to deliver the machine to plaintiff until it is compensated therefor. This had not been paid to defendant. It is admitted that plaintiff authorized defendant to make expenditures for such purpose.

In the case of a sale of machinery with a warranty where the buyer may return the chattel for failure to comply with the warranty "so long as the seller continues to attempt to remedy the defect in the chattel, such as machinery, and holds out encouragement to the buyer that it will be made as warranted, he is justified in postponing its return." In any event the defendant was entitled to a reason-

able time to return the machine after the plaintiff ceased to attempt to remedy the defects: 24 R. C. L., p. 290, § 571; *First Nat. Bank of Webster City* v. *Dutcher,* 128 Iowa, 413 (104 N. W. 497, 1 L. R. A. (N. S.) 142); *Warder etc. Co.* v. *Myers,* 70 Neb. 15 (96 N. W. 992); *McCormick Harvesting Co.* v. *McNicholas,* 66 Minn. 384 (69 N. W. 36); *Jacobs* v. *Crumbaker,* 67 Ill. App. 391.

The rule is stated in 35 Cyc. 440, thus:

"The return of the goods for breach of warranty will be regarded as waived where the failure to return or the delay is caused by conduct of the seller in requesting the buyer to retain the goods for further trial, or by a promise by the seller to remedy the defects, or by an attempt of the seller's agent to remedy the defects after the expiration of the time limited without objection on the ground that notice had not been given."

Expressed differently and in the language of the opinion in *Mine Supply Co.* v. *Columbia Mining Co.,* 48 Or. 391 (86 Pac. 789), "this stipulation can only apply in case plaintiff complied with its contract." If plaintiff did not furnish a mixer of the kind and description specified in the contract and the defendant was damaged by reason thereof "it cannot shield itself from liability behind a stipulation in a contract with which it did not comply."

The syllabus to the case of *Sanford* v. *Brown Bros.,* 208 N. Y. 90 (101 N. E. 797, 50 L. R. A. (N. S.) 778), reads thus:

"It is a well-established canon of interpretation that in seeking for the intent of parties the fact that the construction contended for would make the contract unreasonable and place one of the parties at the mercy of the other may be properly taken into consideration.

"Defendants agreed to and did furnish nursery stock to plaintiff under a contract which contained this clause: 'Any stock which does not prove to be true to name as labeled· is to be replaced free, or purchase price refunded; and all stock to be delivered in a thrifty and healthy condition.' At as early a date as a discovery could be made, it was found that a large number of the trees furnished were not of the variety ordered by the plaintiff, who brought this action to recover damages alleged to have been sustained by him for breach of contract. Defendant moved for the dismissal of the complaint on the ground that plaintiff had not demanded or been refused the measure of damages provided for by the terms of the contract as above quoted. *Held,* that the defendant failed either to limit or avoid liability by the terms employed in the agreement of purchase and sale. The language used by it is susceptible of construction as an inducement to a sale of its goods or as an additional promise upon its part, but cannot be construed as a limitation of liability for a breach of contract."

The claim of plaintiff that the defendant under the contract is not entitled to recover upon its counterclaim was presented in timely objections to the testimony, a motion for a nonsuit as to defendant's counterclaim, and requested instructions to the jury. These questions all revolve around the construction of the contract.

The questions of fact in the case were fairly submitted to the jury by the charge of the court. After fully stating the issues the court's charge reads in part thus:

"The first question for you to consider in this case is whether or not the asphalt mixing plant that was delivered to the defendant was the plant contracted for; that is, the plant as described in the contract of purchase and sale, which has been intro-

duced in evidence and read to you, being Plaintiff's Exhibits 'B' and 'C' at pages 32 and 33 of plaintiff's catalogue, Plaintiff's Exhibit 'D.' * * If you shall find from the preponderance of the evidence that plant delivered was in all material matters the plant contracted for, this ends the case and you will then bring in your verdict for the plaintiff for the agreed contract price of $8,700 less $1,466.75, which it is agreed defendant had paid plaintiff prior to this action.

"On the other hand, if you are not satisfied by a preponderance of the evidence that the plant delivered by the plaintiff to the defendant or as repaired and defective parts, if any, remedied under the direction of the plaintiff, was in all material respects the plant contracted for, you will then turn your attention to the claim of the defendant for damages as alleged in this answer. * * If such plant as accepted by the defendant was of less value than the contract price of the plant contracted for, the defendant would be entitled to recoup in damages the difference between such contract price and the fair reasonable value of the plant as accepted; for instance, by way of illustrating, without expressing any opinion on the evidence—if you should find from the evidence that the plant accepted by the defendant was entirely worthless, it would be your duty to award to the defendant and against the plaintiff the sum of $1,466.75 * * . Of course, whatever sum, if any, you shall determine was the value of the plant as delivered and as repaired, and defects remedied, you will first allow the plaintiff, and if less than $1,466.75, deduct said sum from $1,466.75 and award the remainder to the defendant, but if in excess of $1,466.-75, then deduct $1,466.75 from such value and award the remainder to the plaintiff.

"In addition to this item, if the plant was not as contracted for, plaintiff is liable to the defendant on his warranty. Therefore, if you should find from a preponderance of the evidence that at or before plaintiff accepted the contract, Plaintiff's Exhibits

'B' and 'C' and pages 32 and 33 of plaintiff's cata-
logue, which is Plaintiff's Exhibit 'D,' which ac-
ceptance is agreed to have been April 26, 1919, de-
fendant had entered into a contract or contracts with
Clatsop County whereby defendant was obligated to
lay on the road or roads of said county substantially
36,685 square yards of one and a half inch asphaltic
top which defendant intended to employ said plant in
laying, and that plaintiff had notice or knowledge of
it, or had notice or knowledge of facts from which
an ordinarily reasonable man would have known of
such purpose and contract, in that event, the defend-
ant is entitled to recover upon the warranty in this
contract, Plaintiff's Exhibits 'B' and 'C,' and pages
32 and 33, plaintiff's catalogue being Plaintiff's Ex-
hibit 'D,' the damage suffered, if any, by reason of
the fact that the plant was not as warranted by
plaintiff, * * ''

The court instructed the jury as to the measure of
damages, and then in regard to the expenditures on
the plant by defendant, in substance that, if they
found the machine was in the condition claimed by
defendant and defendant expended money thereon at
the request of plaintiff and on plaintiff's promise to
pay the cost thereof the defendant would be entitled
to recover such expenditures. The court further
charged the jury:

"I instruct you that the proper construction of
these words is that the plant must be in operation
accordingly as provided for in the contract, that is,
it must be in such condition when properly operated,
to lay at least 750 square yards of two inch asphal-
tic top in ten hours and to do this substantially
every operating day. Therefore, the sum of $8,700,
the agreed price, would not become due until the
plant was as represented and contracted for in all
material respects, and then only ten days after same
had been properly operated. Of course, defendant

would be required to begin operating within a reasonable time, and this defendant did in this case."

The charge to the jury is not objectionable.

Plaintiff assigns that the trial court erred in not allowing plaintiff in rebuttal to introduce testimony in regard to the dampness of material used while operating the plant, for the purpose of showing that the mixer was substantially as warranted. The court ruled "that it was a part of the direct case" and "one of the matters that was testified to, to considerable extent on the direct," and not proper rebuttal. The matter had been testified to at great length in plaintiff's case in chief. The attempt was in effect one to have the last word. There was no error in such ruling.

The plaintiff pleaded "that the plaintiff has performed all things by it to be performed and kept according to the terms of said order and contract of purchase * * ." This was under authority of Section 88, Or. L., which reads:

"In pleading the performance of conditions precedent in a contract, it shall not be necessary to state the facts showing such performance, but it may be stated generally that the party duly performed all the conditions on his part; and if such allegation be controverted, the party pleading shall be bound to establish on the trial the facts showing such performance."

This averment was controverted by defendant. Therefore the burden of showing a compliance with the contract devolved upon the plaintiff: *Richardson* v. *Investment Co.*, 66 Or. 353 (133 Pac. 773).

According to the order which constituted the contract between the parties, the defendant is entitled

to maintain its counterclaim. The judgment of the trial court should be affirmed. It is so ordered.

AFFIRMED.

BURNETT, C. J., Dissenting.—This is an action by the plaintiff to recover a balance alleged to be due on the purchase price of an asphalt mixing plant. The transaction was begun by the defendant's addressing to the plaintiff the following order:

"F. C. Austin Company, Inc.,
    "Chicago, Illinois.
"Gentlemen:
    "Please enter order and ship to our address Astoria, Oregon, one Austin Portable Asphalt Mixing Plant as described on pages No. 32 and 33 of your catalogue and for which we agree to pay eighty-seven hundred dollars f. o. b. Astoria, Oregon. Payment to be made in cash within ten days after plant is in operation. And, on accepting this order it is with the understanding that you guarantee the outfit to be well made, of good material and free from defects and should any defective part or parts develop in six months after arrival at destination you are to furnish the new part or parts free, f. o. b. your factory and you are to guarantee the machine when properly operated, capable of laying 750 to 1200 square yards of two inch asphalt top in ten hours. You further agree to send a man at your expense to put the machine in operation and teach us to operate it and stay with the outfit not less than two weeks and we agree to notify you when we are ready to have the machine put in operation, said notice not to be longer than fifteen days after machine arrives at destination; we to furnish all the necessary help to operate the outfit and all material including fuel.
    "If for any cause, when testing the machine defects should develop, you are to have a reasonable length of time to remedy defect, but limited to ninety days and if you are not able to remedy the defect

and make machine deliver the amount of material as herein provided, we are to return the machine to you and the amount we have paid for freight from your factory to Astoria, Oregon, is to be refunded and this order canceled.

"THE J. H. TILLMAN COMPANY.
"By J. H. TILLMAN, Mgr.
"Hammond, Oregon, or
"931 Chamber of Commerce,
"Portland, Oregon.

"Witness: W. F. LOOKER."

It appears that concurrently with the execution of this order the following writing was addressed to the plaintiff by the Howard Cooper Corporation and forwarded with the writing already mentioned:

"F. C. Austin Company, Inc.,
"Chicago, Ill.

"Gentlemen:

"On order for asphalt mixing plant from the J. H. Tillman Co. make the following changes:

"Omit air compressor but leave agitator pipes in kettle so that they may be connected to boiler if so desired and substitute Kinney or any other good asphalt pumps and pipe so that pump agitators or delivers to mixer controlled by three way valve or operating platform piping to be steam jacketed.

"Substitute revolving screen ¾ and ¼ mesh. Make bin capacity not less than 4½ yards, 5 yards preferable, two compartments.

"HOWARD COOPER CORP.
"By (Signed) D. I. COOPER.

"Expense of these changes *are* included in selling price."

The complaint alleges that pursuant to the receipt of the order the plaintiff sold and shipped to the defendant one Austin portable asphalt mixing plant as described in said order, and that the defendant received and accepted it, with certain minor changes, operated it for more than forty days, and has not

paid the purchase price, with the exception of $1,466.75 paid as freight. The plaintiff demands judgment for the balance.

The defendant challenges the complaint in material particulars but admits giving the order as stated, and the execution and forwarding of the writing signed by Howard Cooper Corporation. It is stated in the answer substantially that the plaintiff delivered to the defendant about May 15, 1919, certain appliances and machinery as and for an asphalt mixing plant, representing the same to be the Austin portable mixing plant designated in said written contract, the same being knocked down and not assembled. It is stated in the answer with considerable detail that the plant when assembled did not correspond with the catalogue mentioned in the order, in certain particulars, but that the defendant finally, at considerable expense, set up the machine and operated it up to the time the action was brought. It is also stated that the mixer was ordered for the purpose of carrying on some road paving contracts for Clatsop County, all of which was known to the plaintiff, and that owing to the defects in the machine the defendant was delayed and put to extra expense in completing the paving, to its special damage in a sum mentioned. It is neither alleged nor pretended that the defendant ever returned or offered to return the machine to the plaintiff. On the contrary, it is without dispute in the evidence that after efforts had been made to get the machine to work satisfactorily to the defendant, the plaintiff demanded that the mixer be returned or paid for according to the offer.

The reply traversed the answer in material particulars and made averments to the effect that the

machine was of the kind ordered and would have performed the task specified for it but for want of competent management on the part of the defendant.

A jury trial resulted in a verdict of damages in favor of the defendant and against the plaintiff in the sum of $10,145.47.

There are various assignments of error, which we deem it unnecessary to consider, for the case must turn upon a proper construction of the order.

There is no evidence of any written acceptance of the order made by the defendant, so that the contract depends upon the written offer of the defendant, the acts of the plaintiff in response thereto, and the conduct of the defendant in pursuance thereof. It is unquestioned that the plaintiff forwarded the machine in response to the order of the defendant. This order was an offer to buy certain machinery. The plaintiff was under no obligation to undertake to fill the order. It was within its rights when it tendered the machine which was actually sent in response to the offer to buy. Upon receiving the machine and having an opportunity to inspect it, which is unquestioned, the alternative was presented to the defendant of rejecting the machine and returning it to the plaintiff or of keeping it and paying the price; it was then incumbent upon the defendant to do one of two things: take the machine and pay for it, or return it and get back its payments. No obligation attached to either party until the defendant took the machine and operated it for its own purposes. Until then there was no contract to break.

The order specified that the plaintiff is to guarantee the outfit to be well made, of good material and free from defects, with the privilege on the part of the plaintiff of replacing defective parts discov-

ered within six months after the arrival of the machine at its destination. The further guaranty is that the machine when properly operated would be capable of laying 750 or 1,200 square yards of two-inch asphalt top in ten hours. The controlling condition of the warranty is found in the last clause of the order:

"If, for any cause, when testing the machine, defects should develop, you are to have a reasonable length of time to remedy defects, but limited to ninety days and if you are not able to remedy the defect and make machine deliver the amount of material as herein provided, we are to return the machine to you and the amount we have paid for freight from your factory to Astoria, Oregon, is to be refunded and this order canceled."

If in fact the outfit was not well made or was not of good material, it was defective within the meaning of the contract. It was also faulty, if it could not deliver the material at the rate mentioned in the order. The concluding clause of the order covers and applies to both these features, defective construction and lack of capacity, which constitutes the burden of the defendant's plaint against the machine. The procedure stipulated in the order for the solution of those considerations controls both features of the defendant's objections to the machine.

The defendant admits that it took possession of the machine and used it to complete its contract, albeit with considerable delay. The normal consequence of such action by the defendant is that it must pay the contract price unless that result can be avoided under the terms of the agreement of the parties. It is well settled beyond the necessity of citations to support the doctrine, that ordinarily where no special stipulations are made, the buyer has

the option of refusing to take the machine tendered by the seller in performance of the contract, if the same does not conform to the agreement, or of keeping it and recouping his damages against an action by the seller to recover the price. It is competent, however, for the parties to provide in advance an exclusive formula by which may be avoided or prevented the ordinary result of having to pay the purchase price of an article sold and delivered to the buyer. In *Nave* v. *Powell*, 52 Ind. App. 496, (96 N. E. 395), cited by the defendant here, it is said:

"It must not be forgotten that in contracts of warranty, the same as in all other contracts, the contracting parties have a perfect right to put into such contract all its terms and conditions, and provide all and entire the remedies contemplated and agreed upon by the parties. Upon this subject the supreme court of this state said in the case of *Brown* v. *Russell & Co.*, 105 Ind. 46, at page 52 (4 N. R. 428, at page 431): 'Of course, it was competent for the parties to contract with each other in relation to the extent, terms, and conditions of the warranty, and to impose such limitations and restrictions thereon as they might mutually agree upon.' * * When the parties do agree upon such remedies and their contract by its terms expresses a clear intent and purpose in that respect, they are bound thereby and limited to the remedies, or remedy, so provided. * *

"It is only where there is ambiguity or uncertainty that this rule of construction is called into operation. The rules for the interpretation of express warranties do not essentially differ from those applied to other contracts. In construing such contracts, the object to be ascertained is the intent of the parties; but this intent must be ascertained, if possible, by the language which the parties themselves have adopted and used in such contract, and

not by reading into the same words that import and intent and an understanding wholly unintended and unexpressed when the contract was written, but suggested by some apparant hardship in the enforcement thereof'': Citing authorities.

The terms of the contract evidenced by the admitted written offer restrict the solution of difficulties respecting the quality and efficiency of the machine to the return thereof by the defendant and the repayment to it of the money already paid. The stipulation covers all defects of the machine, either structural or operative or in capacity of manufacture. The order made by the defendant contemplated that just such a dispute might arise as has arisen according to the pleadings, and that the defendant might be unable to accomplish the desired result either through defects or want of capacity of the machine. The order details how only those difficulties must be adjusted and finally solved. It is not a question of breach of the contract by the plaintiff. When it tendered the machine in response to the defendant's offer to buy, there was not as yet any agreement between the parties. None arose until afterward, when the defendant did not return the machine but kept it and used it in completing the paving. The plaintiff is in court substantially saying to the defendant: ''We furnished you a machine upon your offer to pay us $8,700 or return the machine. You have not returned the machine but have kept it and used it in carrying out your contracts, and we therefore demand that you perform the alternative you offered, namely, to pay us the price.'' This is a legitimate demand under the contract the parties themselves have formed. The plaintiff's conduct is not in derogation or breach of the contract but affirms the same in the precise exi-

gency contemplated by the defendant when it made the order. The defendant's refusal to perform the alternative of returning the machine entails the performance of the other alternative, that of paying the contract price. The defendant cannot go on using the machine *ad libitum*, increasing the amount of consequential damages, and expect the plaintiff to pay them. To allow a counterclaim for damages of any kind is to let the defendant into a remedy from which it excluded itself by its covenant to return the machine and get back its money already paid. In its concluding paragraph the offer covers precisely the result described in the pleadings and provides the only means by which in any event the defendant could recover anything from the plaintiff. We cannot make a new contract for the parties; we can only enforce the one they have made for themselves.

Some decisions inculcating this doctrine are here noted. *Consolidated Wagon & Machine Co.* v. *Barben*, 46 Utah, 377 (150 Pac. 949), was a case brought to recover the purchase price of certain machinery sold to the defendant. In the contract of sale it was warranted "that the machinery and goods hereby sold are made of good material and durable with good care to do as good work under the same conditions as any made in the United States of equal size and rated capacity." The terms of the warranty were much like the one in hand and contained this language:

"If, then, the machinery cannot be made to fill the warranty, the part that fails is to be returned by the second parties free of charge to the place where received and the company notified thereof."

The court said:

"The parties in the case at bar, in specific terms, have provided what course shall be pursued by the defendants in case the machinery shall fail to fulfill the terms of the warranty. One of the things required to be done was the service of written notice both on the local agent and also upon the company within a specified time, in which the particular defects claimed to exist in the machinery shall be stated. Another condition was that if the machinery was defective and plaintiff failed to comply with the terms of the warranty, in order to entitle the defendants to rescind and be relieved from their obligation they must return the machinery if the whole is defective, or the defective parts, to the plaintiff. The defendants wholly failed to comply with the condition of serving notice so far as the company is concerned. They did not even attempt to comply with that provision. This, under the cases before cited, is alone sufficient to prevent them from sustaining a defense to an action for the purchase price of the machinery."

After discussing in similar strain the stipulation about returning the machinery, the court concluded the matter in this language:

"Without pausing to discuss any of the other numerous errors assigned, we, for the reasons stated, are forced to the conclusion that under the undisputed evidence as it now stands, there is but one course open to the trial court, and that was to direct the jury to return the verdict for the plaintiff in the full amount sued for, with interest and costs, as stipulated in the contract."

Another case is *J. A. Fay & Eagan Co.* v. *Crowell*, 182 N. C. 532 (109 S. E. 562), decided November 30, 1921. The stipulation of the contract there involved was as follows:

"That in case of rejection the undersigned will promptly deliver it [the machinery] to consignor,

104 Or.—38

f. o. b. Cincinnati, Ohio; that this contract is not modified or added to by any agreement not expressly stated herein, and that a retention of the property forwarded, after thirty days from its arrival at destination, shall constitute a trial and acceptance, be a conclusive admission of the truth of all representations made by or for the consignor, and a fulfillment of all its contracts of warranty, express or implied.''

The court, commenting on this stipulation, said:

''It has been the settled holding with us, in a long line of decisions, that where there is an express warranty in the sale of personal property, and it is stipulated as a condition of the contract of sale that the property is to be returned within a specified time, if not as represented, the complaining party is entitled to no redress by reason of a breach of the warranty, in the absence of fraud or a waiver of the condition, without first offering to return the property within the time fixed by the contract: *Robinson* v. *Huffstetler*, 165 N. C. 459 (81 S. E. 753), and cases there cited. See, also, 35 Cyc. 437. In the absence of fraud, this rule applies equally to a case where the goods delivered are different from, and inferior to, those sold, as where the property, though corresponding in description with the article purchased, is defective or wanting in quality. If the vendor tender goods of less value than those purchased, the vendee is not bound to accept them. But if he does accept them, under the terms of his agreement, he is deemed to assent to a fulfilment of the contract on the part of the vendor: *Pierson* v. *Crooks*, 115 N. Y. 539 (22 N. E. 349, 12 Am. St. Rep. 831). And in the instant case such acceptance and retention afford a 'conclusive admission of the truth of all representations made by or for the consignor, and a fulfilment of all its contracts of warranty, express or implied.' * * In the light of the foregoing authorities, and upon the record, we think his honor should have directed a verdict in favor of the plaintiff for the balance due on the unpaid notes.''

It is said in *Wilson* v. *Nichols & Shepherd Co.,* 139 Ky. 506 (29 Ky. Law Rep. 1128, 97 S. W. 18), speaking of such stipulations:

"Contracts similar to this have been before this court in a number of cases, and it has uniformly been ruled that, when the parties to the contract have agreed upon the warranties and the remedies that accrue upon a breach of them, those remedies constitute the only relief in this particular that the purchaser has, and he must look to his contract, and be governed by its stipulations. The contract here affords to the purchaser a remedy, if the warranty is broken, that will at once relieve him from all liability. He cannot retain the machine, and demand his purchase notes, thereby canceling the contract; but if he elects to retain the property, in its defective condition, he must pay the purchase price."

The precedents cited by the defendant are instances where the return of the machine is merely optional in favor of the purchaser, or where the same has been waived by the seller, or else the warranty upon the breach of which damages were assigned had no relation to the return of the machine. It is very plain, however, in the instant case that the return of the machine has been made applicable as a remedy for all the defects and lack of capacity specified in the pleadings here. It is manifest that the machinery actually delivered to the defendant was the basis upon which the parties have operated under the contract. In other words, it is the subject matter of the contract as actually performed *pro tanto*. It was the written order of the defendant that induced the shipment of that particular machine and its delivery into the possession of the defendant. Manifestly the machine was tendered in performance of that order, and that tender constituted the plain-

tiff's acceptance of the defendant's offer to buy as embodied in the order. The exclusive dilemma was then presented to the defendant, either to return the machine and recover its payments, or to keep it and pay the purchase price. By the terms of its own offer, it excludes itself from the ordinary option of returning the machine or keeping it and abating the purchase price by a counterclaim for damages suffered on account of its defects. Having itself thus marked out the course of procedure, the defendant must be bound thereby. It cannot take the machine and operate it as if no such covenant had been inserted in its order.

Something has been said about not allowing the plaintiff the benefit of the contract which it has not itself performed, yet the stipulation in the final paragraph of the defendant's order covers and was in-tended to cover just such a contingency. It provides an exclusive remedy for the very breach which the defendant avers. If the machine had been all that the defendant claims it ought to have been, the clause of the order referred to would have been utterly useless. There is presented the very situation which the parties contemplated might be possible, and they provided in advance for its adjustment. To allow them to do otherwise than as they have stipulated respecting the alleged failure of the machine, is for the court to construct for them a new contract. Generally it has been decided that this cannot rightly be done.

The fallacy of the opposing view is found in the theory that the order constitutes the sole and exclusive evidence of the contract between the parties. The truth is that at the outset it was only an offer to buy and had no binding effect upon the plaintiff.

The latter had the right to tender the machine as it did, in acceptance of the offer to buy, or at the very least as a counter-offer. In either case, knowing this as it did, the defendant should have rejected the machine or paid for it, whether it came as a tender or as a counter-offer. The whole transaction is one of offer and acceptance. That the defendant accepted the machine and used it to complete its contract, is written large throughout the record. That it cannot now pay for it in damages and reap a profit on that score besides, is apparent because its own offer limited the defendant to rejection or payment and excluded the recovery of damages.

The following authorities may be consulted with benefit: *Charter Gas & Engine Co.* v. *Barton* (Ala., not reported), 39 South. 985; *Purcell* v. *International Harvester Co.,* 37 S. D. 517 (159 N. W. 47); *J. L. White Furnace Co.* v. *C. W. Miller Transp. Co.,* 59 Misc. Rep. 66 (109 N. Y. Supp. 796); *Case Threshing Machine Co.* v. *Cook,* 7 Ga. App. 631 (67 S. E. 890); *Sturtevant Mill Co.* v. *Kingsland Brick Co.,* 74 N. J. L. 492 (70 Atl. 732); *Fay & Egan Co.* v. *Dudley,* 129 Ga. 314 (58 S. E. 826); *Nichols-Shepherd Co.* v. *Rhoadman,* 112 Mo. App. 299 (87 S. W. 62); *King* v. *Towsley,* 64 Iowa, 75 (19 N. W. 859); *Crouch* v. *Leake,* 108 Ark. 322 (157 S. W. 340, 50 L. R. A. (N. S.) 774); *Rowell* v. *Oleson,* 32 Minn 288 (20 N. W. 227); *Gaar, Scott & Co.* v. *Hodges,* 28 Ky. Law Rep. 889 (90 S. W. 580). These considerations are controlling in the disposition of this case.

*Feeney & Bremer Co.* v. *Stone,* 89 Or. 360 (171 Pac. 569, 174 Pac. 162), is neither controlling nor applicable here. In that case the buyer assumed no obligation except to pay the purchase price of the

machine on compliance by the seller with the terms of the contract of sale. The buyer there did not agree to forego his ordinary optional right to keep the goods tendered by the seller and recoup his damages in an action against the latter to recover the purchase price. Here, as an express condition of the defendant's order, it stipulates in plain terms that if in testing the machine defects are developed, "we are to return the machine to you and the amount we have paid for freight from your factory to Astoria, Oregon, is to be refunded and this order canceled." These terms are positive and exclusive, leaving no option to the defendant to pursue any other remedy for breach of the contract.

As in ordinary cases where the buyer elects to keep the goods, both parties here treated the machine in question as the subject matter of the contract, and both plead that contract as the standard governing their relations to each other. In construing that instrument it is not by the mark to apply the last clause only to latent defects not ascertainable except by a test of the machine. But even so, it may be granted for the sake of argument that there were several patent features in which the machine delivered to and kept by the defendant differed from the pictures and description in the plaintiff's catalogue and for the disclosure of which no test was required; yet the record tells us of defects that could not be revealed except by a test. The principal one of these, about which the most complaint is made, is the lack of capacity to turn out the minimum amount of material. Others are the breakage of parts and the like. Hence there are ample data coming within the purview of the

last clause of the contract under its strictest construction.

What, then, is the result? Did the plaintiff deliver a machine to the defendant in response to the latter's order? It did. Did both parties treat it as the subject matter of the contract? They did. Especially did the defendant do so by using it to complete its paving contract, refusing to surrender it on the plaintiff's demand, taking charge of it from the latter's watchman and repairing it on its own account. Did the parties test the machine? Assuredly they did. Did that test develop defects not otherwise ascertainable? The record proclaims an affirmative answer. The consequence is that it was the duty of the defendant to return the machine, cancel the order and take back the advance payment. Such a process, required as it is by the contract, would have restored the parties to their former situation. Cancellation of the contract as the result of its own terms extinguishes all right to sue for damages, for no one can recover damages *ex contractu* without a living contract as a basis. Neither can one recover damages for a breach of contract who has broken it himself. In this instance the defendant has not kept the covenant in that it did not return the machine when the test developed its defects and hence it is in no position to claim damages. The conclusion is, that the defendant should be made to pay the contract price, subject of course to deductions of such sums of money paid out by it on the plaintiff's request as may be made to appear by proper pleading and proof. But no damages *eo nomine* are recoverable under the contract involved.

Manifestly, the defendant made a bargain that proved to be a hard one when viewed in connection with the penalties of its paving contract with Clatsop County. Yet the contract in suit is a lawful one. It is not impeached for fraud. It is the rule prescribed by the parties themselves to govern their relations to each other and we cannot relieve them from it in this action at law. To sustain the defendant's contention is to allow it to carry into effect the part of the contract favorable to itself and to reject the remainder, or else for the court to make and enforce a new and different covenant, a result condemned by all precedents. A different construction of the writing in question would require of the plaintiff strict and complete performance of the contract on its part before it can claim the benefit of the concluding paragraph, whereas that part of the covenant was designed by the parties as an exclusive remedy for just such a breach as the defendant assigns.

The judgment should be reversed.