CASE 61.—ACTION  BY  W. M. WISDOM, ET AL.  AGAINST
          NICHOLS  &  SHEPHERD COMPANY.—October 26,
          1906.

# Wilson, &c. v. Nichols & Shepherd Co.

## Appeal from Todd Circuit Court.

Judgment for plaintiff and defendant appeals.—
Affirmed.

1.  Equity—Submission of Issues to Jury—Binding Effect of
    Verdict.—An action on notes given for the price of goods
    and to foreclose a mortgage lien to secure them is properly
    brought in equity, and the court submitting as authorized by
    Civ. Code Prac. section, 12, an issue to the jury involving
    the question of fraud, inducing the buyer to enter into the
    contract of sale, may adopt or disregard the findings of the
    jury, as appears right in its discretion.
2.  Appeal—Finding of Chancellor—Conclusiveness.—Where the
    proof is conflicting on the whole case, or the mind is left in
    doubt as to the truth, the court on appeal will not disturb
    the chancellor's judgment.
3.  Sales—Warranty—Fraud— Evidence— Sufficiency.— Evidence
    examined, and held not to support a finding that a contract
    of warranty of an article sold was the product of the fraud
    of the seller.
4.  Same—Breach of Warranty—Remedy.—Where the parties to
    a contract of sale have agreed on the warranties and the
    remedies that accrue on a breach of them, the remedies con-
    stitute the only relief afforded a party, and he must look to
    his contract and be governed by its terms.
5.  Same.—A contract for the sale of a threshing machine war-
    ranted the machine, and provided that, if within five days
    from its first use it should fail to fill the warranty, notice
    should be given by the seller, and reasonable time allowed
    to remedy the defect, and if, after notice and opportunity to
    remedy had been provided, the machine could not be made
    to fill the warranty, it should be returned by the buyer.  The
    The machine did not fill the warranty, and the buyer, on the
    second day after it was started, notified the seller thereof,

but continued to use the machine, though the seller failed to remedy the defect. Held, that the buyer could not return the machine, and thereby cancel the contract, but if he sustained damages by the refusal of the seller to comply with its warranty, he could maintain an action therefor.

PERKINS & TRIMBLE for appellants.

PETRIE & STANDARD, for appellee.

OPINION OF THE COURT BY JOHN D. CARROLL, COMMISSIONER—Affirming.

On June 24, 1902, the appellee sold to appellants a threshing machine and wind stacker. In an action in equity on the notes, executed for the purchase price, and to foreclose the mortgage lien to secure them, appellants relied for defense on a verbal contract and warranty alleged to have been made when the machine was purchased, which was in substance that the machine was first-class and would do better work and more of it than any other machine. Appellee relied on a written contract executed by appellants, averring that it contained the entire contract between the parties. This written contract appellants contend was obtained by fraud and therefore not binding on them.

On motion of appellants, a number of issues out of chancery were submitted to a jury. The questions submitted were answered favorably to appellants, but the court ignored the findings of the jury and rendered a judgment for appellee.

The first question to be determined is, were the findings of the jury binding upon the court, and if not so considered, should the court have re-submitted the issue to another jury? One of the principal questions submitted to the jury was whether or not the written contract relied on by appellee was obtained

by fraud. Upon the answer to this depended the other questions. Section 12 of the Code, provides that "In an equitable action, properly commenced as such, either party may by motion have the case transferred to the ordinary docket for the trial of any issue concerning which he is entitled to a jury trial." This action was properly brought in equity, and it was entirely within the sound discretion of the court whether or not it would submit the issues of fact involved to a jury, and when the court called to its aid a jury for the purpose of getting their opinion upon the questions of fact submitted, the findings of the jury were not conclusive upon the court. It had a right to adopt or disregard them as appeared right in its discretion.

In McElwain v. Russell, 11 Ky. Law Rep., 649, an action brought to settle an estate and cancel a deed alleged to have been procured by fraud and undue influence, the court submitted the issues of fact made by the pleadings to a jury. In considering the effect to which the verdict was entitled, this court said: "As reference to a jury in equity cases is merely for the purpose of aiding the chancellor in determining the issues of fact, and is made, or not, in his discretion, the finding is not conclusive."

In Hill v. Phillips, 87 Ky., 169, the court said: "In a case of purely equitable cognizance, the chancellor has the discretionary power to direct an issue of fact to be tried by a jury, and their verdict is generally speaking treated by the chancellor as conclusive between the parties but it is not necessarily conclusive for the reason that the chancellor simply seeks the advice of the jury to aid him in coming to a correct conclusion on a mooted question of fact." Ford v. Ellis, 21 Ky., 1837; Reese v. Youtsey, 24 Ky. Law Rep. 603; Jones v. Wood, 24 Ky. Law Rep., 840.

A different rule obtains where a distinct legal issue is made in an equitable action, as under section 12, supra, either party has the right to a jury trial concerning such issue; and the finding of a jury when an issue of this character is submitted, has the same effect as the verdict of a jury in ordinary jury trials, and is conclusive between the parties, unless the court upon motion for a new trial is satisfied that it is palpably against the weight of evidence. Hill v. Phillips, 87 Ky. 169; Bush v. Eastern Ky. Timber Co. 28 Ky. Law Rep. 773; Baxter v. Knox 17 Ky. Law Rep. 489.

In cases of this character, where an issue of equitable cognizance is submitted to a jury in aid of the chancellor, and the findings of the jury are disregarded by him, the judgment of the chancellor will be considered by this court without reference to the verdict of the jury, and the same effect will be given to it as if there had been no finding of facts. As frequently held this court will consider the evidence and determine the case according to the truth of the matter as it shall appear to the court from the whole record, and where the proof is conflicting on the whole case or the mind is left in doubt as to the truth, the chancellor's judgment will not be disturbed. McCampbell v. McCampbell, 103 Ky. 745; Campbell v. Tuskber, 108 Ky. 602.

It appears from the evidence that appellants were intelligent and prosperous farmers, and that an agent of appellee made several efforts to induce them to buy a machine; representing that it was the best machine on earth, and guaranteed to do more work and better work than any other machine. Finally he succeeded in persuading them to buy his machine, and they went to the city of Elkton as testified to by appellant Lamb, for the purpose of closing the trade, when the writ-

ten contract was executed in duplicate, one copy being retained by the agent and another delivered to appellants. It does not appear that the contract before or at the time it was signed was either read by or to them, although they had ample opportunity to read it, and no unfair, improper or fraudulent means were resorted to in an effort to induce them to sign it nor were they dissuaded from reading it by any trick artifice or fraud.

The contract provided that ''each machine is well made, of good material, and with proper management is capable of doing more and better work than any other machine made of like size and proportions working under the same conditions and on the same job,'' and ''that if within five days from its first use it shall fail to fill this warranty, written notice shall be immediately given by the purchaser to Nichols & Shepherd Company at Battle Creek, Michigan, by registered letter, and a written notice also to the local dealer through whom the same was received, stating particularly how and wherein it fails to fill the warranty. Reasonable time shall be allowed for the company to get to the machine with its workmen and remedy the defect, if any there be, unless it be such a nature that remedy may be suggested by letter; the purchaser to render friendly assistance and co-operation. .If, after giving the notice and opportunity to remedy the difficulty complained of has been provided, the machine complained of cannot be made to fill the warranty, it shall be returned immediately by the undersigned to the place where it was received, with the option of the company either to furnish another machine in place of the machine so returned, which shall perform the work, or return the money and credit the notes which have been received by the company for the same with

its purchase price and thereby rescind the contract to that extent or the whole as the case may be and be released from any further liability herein." It further stipulated that "no general or special agent or local dealer is authorized to make any change in this warranty. Workmen or experts are not agents and have no authority to bind the company by any contract or statement. Neither shall the fact that any local or traveling agent or expert of this company rendering assistance of any nature at any time operate as an extension or waiver of the conditions thereof."

A few days afterwards, the machine was received, and failing to do good work, appellants on July 10, 1902, the second day after it was started, wrote to appellees at Battle Creek, Michigan, a letter stating in substance that the machine was not giving satisfaction, that it did not clean the wheat properly, or get it out of the heads and, that some pieces of the machinery were broken; saying in conclusion, "we have had experience in running a machine and notify you as per contract." Soon after this, an agent of appellee arrived and aided in operating the machine, but appellants were not satisfied with the work done by it, and a number of witnesses testified that it did not clean the wheat well and a good deal of it was lost by being blown out in the straw stack. At the close of the season of 1902, appellants paid one of the notes due, under a promise made by an agent of limited authority that the machine would be put in first-class order for the next season, and relying on this promise, as they say, they were induced to keep the machine.

In July, 1903, they again wrote appellee, stating in substance that the machine failed to give satisfaction or do the work "it was warranted to do in our contract

and of which you had our written notice given you within five days as provided," that the machine would not take the grain out of the head or clean the wheat, and a large part of it went into the straw stack, that the person sent to repair or adjust the machine failed to do it any good. In answer to this letter, appellee wrote, calling attention of appellants to the stipulations in the contract, and giving some advice as to how the machine should be operated.

Evidence was introduced showing that the machine did not do any better work in 1903 than it did in 1902, although each year about four thousand bushels of grain was threshed. Appellants did not return or offer to return the machine, and had possession of it when the case was tried. Evidence was introduced for appellee tending to establish that the machine if properly operated would do good work and that the complaints were due chiefly to the fact that the wheat was light and defective in quality and consequently difficult to clean or thresh properly. Whilst the evidence for appellants was to the effect that the difficulty was in the construction of the machine, and that they were damaged several hundred dollars by its failure to fulfill the warranty made when it was purchased.

The real question in the case is, was the written contract obtained by fraud? If it was not, the prior verbal statements made by the agent who sold it and which are in effect contained in the written contract were merged in it and the conditions in the written contract are conclusive upon appellants. If the written contract is a valid and binding obligation, then appellants must fail because they did not perform the conditions upon them by it; and no general agent, or agent authorized to make any change in the written

contract, made any statements or representations to them, subsequent to the execution of this contract, that would operate as a waiver by the company of its conditions.    Second National Bank of Richmond v. Adams, 29 Ky. Law Rep. 567.

There is evidence tending to show that immaterial alterations were made in the written contract after its execution but they are not of sufficient import-ance to require further notice.

A careful reading of this record satisfies us that no fraud was practiced in procuring the written contract. Appellants admit that they had opportunity to read it, both before and after they signed it, and a copy of it was delivered to them at the time; that they did read and understand its provisions in ample time to have availed themselves of the condition in the warranty authorizing them to return the machine if it failed to give satisfaction, is made plain by the letter written by them to appellee the second day after the machine was started, in which they say: ''We have had ex-perience in running a machine, and notify you as per contract.''    Further recognition of the fact that the written contract was the only contract made between the parties, is made manifest in the letter written by appellants to appellee on July 4, 1903, in which they said: ''By contract of date June 24, 1902, we pur-chased of you one belted separator.  *   *   *   Upon receipt of this machine, it failed to give satisfaction and failed to do the work as it was warranted to do in our contract, and of which you had our written notice given to you within five days as provided.''

It, therefore, follows that the rights of appellants. must be determined by the provisions of the written contract.    Contracts similar to this have been before this court in a number of cases, and it has uniformly

been ruled that when the parties to a contract have agreed upon the warranties and the remedies that accrue upon a breach of them, that these remedies constitute the only relief in this particular that the purchaser has, and he must look to his contract and be governed by its stipulations. The contract here affords to the purchaser a remedy if the warranty is broken, that will at once relieve him from all liability. He can return the machine and demand his purchase notes, thereby cancelling the contract; but if he elects to retain the property in its defective condition, he must pay the purchase price. Garr-Scott & Co. v. Hodgers, 28 Ky. Law Rep. 889; J. I. Case Threshing Machine Co. v. Lyons, 24 Ky. Law Rep. 1862; McCormick Harvesting. Machine Co. v. Arnold, 25 Ky. Law Rep. 663; Frick v. Morgan & Co., 24 Ky. Law Rep. 836; Nicholas & Shepherd Co. v. Caldwell, 26 Ky. Law Rep. 136. The purchaser discovered the defective condition of the machine on the second day after it was started, and as provided in the contract he at once notified the seller; but, after notifying him he continued to keep and use the machine, although the seller failed to remedy the defect and it was not fulfilling the warranty. Upon the failure of the company, after receiving the notice, to repair the defects, or comply with its warranty, the purchaser has a reasonable time within which to return the machine and demand the cancellation of the contract, but he cannot retain the machine and also refuse to pay for it. This contract is not, as counsel contend, unilateral or unreasonable, nor does it leave the buyer entirely without remedy if he sustain damage by the failure or refusal of the company to comply with its warranty. If the purchaser is compelled to and does return the machine because the seller fails or refuses

in a reasonable time after receiving notice to repair it or comply with his warranty, he would have a cause of action against the seller for the damages resulting to him.

Perceiving no error in the judgment, it is affirmed.