McGRAW TIRE & RUBBER COMPANY, Appellant, v.
BARTON et al, Respondents.

(211 N. W. 807.)

(File No. 5782.   Opinion filed January 28, 1927.)

1.  Sales—Finding that Buyers of Tires Were Relieved from Contracts by Representations as to Quality Held Not Justified by Evidence.

    Evidence held not to justify finding that representations as to quality of automobile tire casings relieved purchasers from any terms of written contracts of purchase providing methods of adjustment for defects.

2.  Sales—Buyers of Tires Who Pursued Methods of Adjusting Defects Provided in Contracts Cannot Counterclaim for Damages for Breach of Warranty When Sued for Price.

    Where written contracts of sale of automobile tire casings and tubes provided methods of adjustment of defects, and buyers pursued those methods, buyers cannot counterclaim for damages for breach of warranty when sued for price, since, if they had an election of remedies, they exercised their election.

Note.—See, Headnote (1), American Key-Numbered Digest, Sales, Key-No. 52(7), 35 Cyc. 84;  (2) Sales, Key-No. 426, 35 Cyc. 438

Appeal from Circuit Court, Brown County; Hon. Robert D. Gardner, Judge.

Action by the McGraw Tire & Rubber Company against H. G. Barton and another, as Barton Brothers Tire Company, and another, with counterclaim by defendants. From judgment for defendants and order denying a new trial, plaintiff appeals. Reversed and remanded, with directions.

*Campbell & Fletcher,* of Aberdeen, for Appellant.

*Ed. L. Grantham* and *H. O. Hepperle,* both of Aberdeen, for Respondents.

MORIARTY, C.  The appellant McGraw Tire & Rubber Company sued the respondents for $1,392.36 alleged to be due as a balance of account for goods purchased from appellant by Barton Bros. Tire Company.

The answer admits the purchase of the goods, and that the balance due upon the invoice price of the goods would be the sum claimed in the complaint, except for offsets and counterclaims, as follows:

First, that the defendants Barton Bros. purchased of the plaintiff rubber tire castings for which they paid plaintiff $20,000; that said casings were represented to be high-grade, first-class tires and casings, and, if as represented, would have been worth the amount paid for them, but that the tires actually delivered were of such character that, as delivered, they were not worth more than $10,000, and on this item respondents ask for an affirmative judgment against the appellant in the sum of $10,000.

For a second counterclaim the answer alleges that respondents expended funds in establishing agencies for the sale of the tires manufactured by appellant and in advertising said tires, relying on appellant's representation that said tires were high-grade, first quality tires; that, if said tires had been as represented, the establishment of said agencies and the advertising which respondent gave to the tires would have resulted in a profit of not less than $5,000 from the business so established, but that the failure of the tires to conform to the warranty rendered them unsalable, and caused respondents to lose their expenditures aforesaid and the profits which they would otherwise have made from the business organization which they had established, and they ask judgment for $10,000 on this second counterclaim.

The jury returned a verdict for respondents in the sum of $6,024. Appellant moved for judgment notwithstanding the verdict, and the motion was denied. From judgment entered upon this verdict and from an order denying a new trial plaintiff appeals.

Appellant's brief presents 56 assignments of error, dealing with alleged errors in the admission of evidence, with the denial of plaintiff's motion for the direction of a verdict in its favor, and with the refusal of instructions excepted to by plaintiff. To discuss in detail these assignments, or to set forth in full the instruction proposed or the instructions given, would be to extend this opinion to undue length.

We are satisfied that the learned trial court was led into frequent error by its failure to adopt a proper theory for the trial of the case.

[1, 2] The record shows that the parties to this litigation entered into a written contract in the fall of 1919. No copy of this contract was introduced in evidence, but the record does contain a copy of a contract entered into between the same parties on October 1, 1921, and the evidence shows that the two contracts were identical, except that the 1919 contract provided that adjustments made for defects of material or workmanship in tires purchased under the terms of the contract should be made by the McGraw Company after the defective tires had been sent to the factory or to the nearest branch office of the company, while the 1921 contract provided for the making of the adjustment by the respondents, and the sending in of the tires afterward for the appellant's approval of the adjustment.

The contract in evidence provides for the purchase of automobile tire casings and tubes from appellant corporation by the respondents. It further provides the discounts from list prices that were to be allowed to respondents, and the allowances for transportation charges, and it provides that respondents shall have exclusive sales rights in certain territory therein described.

And, in consideration of the terms of sale and the granting of sales territory, respondents agree to promote the sales of appellant's tires and tubes, and to give them leadership over other brands.

This written contract contains the following provision:

"There are no verbal agreements or understandings of any

kind except as herein expressed; and this agreement shall not be changed or modified by custom or otherwise except in writing by an official of your" (the McGraw) "company and with the same formality as the agreement."

Attached to the contract is a rider, specifically made a part of the contract, and signed by both the parties thereto which rider provides as follows:

"In the event of any McGraw casings proving unserviceable, by reason of imperfections in workmanship and material, you" (Barton Bros. Tire Company) "but not your customers, so long as satisfactory to us, may make adjustments on the basis of 6,000 mile service on fabric casings and 8,000-mile service on cord casings, computed on basis of our prevailing consumers' price list; and new casings will be shipped you in replacement of such adjustments, such casings shipped in replacement will be invoiced to you at the adjustment price, less 10 per cent, of the amount of each invoice as compensation for handling same."

One of the defendants testified that shortly prior to the execution of the 1921 contract an agent of the McGraw Company stated to him that the casings which that company had furnished to defendants prior to the time of the conversation had been defective in certain items of their construction, but that these defects had been remedied, and that the McGraw casings which would be furnished thereafter would be in all respects first-class, high-grade casings. There was no evidence whatever of any representations being made prior to the execution of the 1919 contract.

The evidence showed that many tires furnished by the plaintiff, and sold by defendants to their customers, were returned for adjustments on account of defects of material or workmanship. And opinion evidence was admitted to show that the percentage of defective casings was greater than it should be with first grade casings. There was no attempt made to show whether these adjustments were made before or after the execution of the 1921 contract. Over properly interposed objections as to its materiality, the trial court admitted evidence as to expenditures made by defendants, in advertising McGraw tires, in salaries and expenses of traveling representatives engaged in making sales, and in establishing sales agencies of the defendants. No effort was made to

distinguish between expenditures made under the 1919 contract and those made after the execution of the 1921 contract. There is no claim that any adjustments asked for were not fairly made.

At the close of the evidence plaintiff's counsel moved for the direction of a verdict in its favor, on the ground, among others, that the written contract provided for the defendants' remedy in case the tires were defective in material and workmanship, that defendants had availed themselves of that remedy, and were limited to that as their sole remedy. The trial court denied this motion. The denial was properly excepted to, and is assigned as error on this appeal.

There is no evidence sufficient to justify any court in finding that the respondents were relieved from any provision of their written contracts by any representations as to the quality of the McGraw casings.

The two provisions contained in these contracts and above quoted are covenants such as they could properly enter into, and by which they can properly be held to be bound. The briefs of the respective counsel devote considerable space to the discussion of the question whether the provision as to adjustments for defective casings is an express warranty which will preclude implied warranties. But we do not consider that question material to the decision of this appeal. If we concede that there is no warranty which will exclude implied warranties, nevertheless there is no claim of the breach of any warranty except as to defective workmanship or material. For any such defect the written contract provides a remedy. We are not called upon to decide whether that remedy is made exclusive by the terms of the contract. If those terms gave respondents an option to accept that remedy or seek some other remedy, the record shows that they exercised that option by pursuing the remedy provided. Having done so, that remedy was made exclusive. Elliott Supply Co. v. Hanson, 39 S. D. 570, 165 N. W. 991; Hope v. Peck (Okl. Sup.) 132 P. 344; Helvetia Copper Co. v. Hart-Parr Co., 142 Minn. 74, 171 N. W. 272, 767; Moline Plow Co. v. Adair, 76 Okl. 4, 183 P. 499; J. I. Case Threshing Machine Co. v. Rose, 191 Ky. 433, 230 S. W. 545; Wilson v. Nichols & Shepherd Co., 139 Ky. 506, 97 S. W. 18; Nunn v. Brillhart (Tex. Com. App.) 242 S. W. 459; Fealk v. Economy Baler Co., 223 Mich. 45, 193 N. W. 787.