## Black Motor Co. v. Foure.
(Decided Dec. 4, 1936.)

E. L. MORGAN for appellant.

J. B. WALL for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

The appellant, the Black Motor Company, is a corporation having its principal place of business at Harlan, Ky., where it is engaged in a general automobile business.

On May 4, 1934, it sold and delivered to the appellee, J. M. Foure, a 1½ ton International truck for the sum of $1,500 (including financing charge, etc.) upon which a down payment of $585 was made, and for the remaining $915 purchaser executed his note, to be paid at the rate of $50 per month, commencing on June 15, 1934, and continuing consecutively each month until the last and only payment in the sum of $65 became due.

As evidence of the purchase and sale the parties made and executed an order for a conditional sales contract with the International Harvester Company for the truck involved which provided that:

"The title to all goods ordered and furnished hereunder shall not pass to the purchaser until the full purchase price and all notes given therefor have been paid in full in cash, and nothing herein shall release the purchaser from paying therefor, and after delivery to the purchaser said property shall be held and used at his risk and expense with respect to loss or damages and taxes and charges of every kind."

Further the contract provided that:

"The goods ordered hereunder are sold under the regular printed warranty of the International Harvester Company of America as printed hereon and no other," and which warranty is as follows:

"The International Harvester Company of America, incorporated, *warrants each new International Motor Truck to be free from defects in material and workmanship under normal use and service, our obligation under this warranty being limited to making good at the factory any part or parts thereof which shall be returned to us with transportation charges prepaid,* and which our examination shall disclose to our satisfaction to have

been thus defective, provided *that such part or parts shall be so returned to us not later than ninety [90] days after delivery of such vehicle to the original purchaser, and that at the time of such return, the said vehicle shall not have been operated in excess of five thousand [5,000] miles. This warranty is expressly in lieu of all other warranties express or implied and of all other obligations or liabilities on our part, and we neither assume nor authorize any other person to assume for us any other liability in connection with the sale of our vehicle.*

"This warranty shall not apply to any vehicle which shall have been repaired or altered outside of the factory in any way so as, in our judgment, to effect its stability, or reliability nor which *has been subject to misuse, negligence or accident,* nor to any commercial vehicle made by us *which shall have been operated at a speed exceeding the factory rated speed, or loaded beyond the factory rated* load capacity. * * *" (Italics ours.)

Upon the sale and delivery of this truck by appellant to Foure under the above contract, and his thereupon executing to seller his purchase money note, as stated, for $915, same being the balance owing of the unpaid purchase price, he at the same time executed a mortgage upon the truck, securing its payment according to the terms of the contract as above set out.

This note so executed further provided by its terms as follows:

"After maturity each installment shall draw interest at 6%.

"This note is given for the balance of the purchase price of one International Motor Truck B-3, Chassis No. B3-11206, Motor No. FAB-11453, and *I hereby agree that the title thereto and to all repairs, replacements of and accessions to said property shall remain in the payee until this note shall have been fully paid in money."* (Italics ours.)

The appellant motor company, as was at the time understood by buyer, immediately upon receipt of this note and mortgage, financed the same, with recourse, with the maker of the truck, the International Harvester

Company, and to which there was later paid upon the note by buyer the first four installments, coming due respectively in June to September, inclusive, aggregating $200, after which he defaulted in making any further payments thereon.

Later, on January 11 following, the appellant having been called upon by the finance company, its endorsee, to pay the $715 and interest due it upon Foure's note, precipitated in its maturity by default in installment payments, it paid same, recovered possession of the truck and filed suit against buyer for this balance due on his note, together with an additional item of $38.70, which Foure owed it for services rendered upon the truck, and prayed that it be adjudged a lien on the truck for said total sum of $753.70, and that same be sold and the proceeds applied to the satisfaction of the debt, interest, and costs.

To the petition, the defendant buyer filed answer and counterclaim, by which he denied that the truck sold him complied in its materials and workmanship with the warranty made by the seller thereon, whereby it was guaranteed for a period of 3 months, or until it had been driven 5,000 miles, to be free from defects in material and workmanship employed in its construction. On the contrary, he alleged that the truck was, from the day of its delivery to him, found to be defective both in material and workmanship, rendering it worthless, and for which reason he pleaded his right and election to rescind the contract and recover his payments made thereon of $785 and the further sums of $185, the alleged price and value paid by him for certain accessories placed thereon, and $300 for damages suffered because of his 3 months loss of profits, resulting from loss of the truck's use, by reason of its being wrongly held for such period by plaintiff for repair bills claimed owing against it.

A reply completed the issues.

By the reply it was pleaded that defendant had forfeited his rights under the warranty, for the reason that he had, in violation of the terms of the warranty, misused said truck, both by driving it at a speed thereby prohibited as exceeding its factory rated speed limit and also by overloading it beyond its 1½ ton factory rated load capacity, within the 3-month period covered

by the covenant of warranty and that such misuse or negligent use of the truck by buyer had caused and resulted in damaging it in the respects complained of as defective and which, if then existing, did not come within the warranty given upon the truck against "defects in material and workmanship under normal use and service."

To establish respectively the issues thus joined, the evidence for the plaintiff seller was that immediately upon its delivery of the truck to Foure on May 4, he sent the same on a long freight hauling trip to Corpus Christi, Tex., where he overloaded same for the return trip to Kentucky with some 200 sacks of onions, weighing 5 or 6 tons. Also there was evidence of other like instances of overloading his truck, within the 90 day warranty period, far in excess of the 1½ ton rated load capacity for which warranted, and which overloading, it was testified, tended to and did damage the truck in the very respect and particular parts of it which were afterwards claimed by buyer to be defective and in breach of warranty.

Further, plaintiff testified, as to the material and workmanship of the truck, that no serious or material complaint, of its being substantially defective as to its parts or workmanship, was made by the buyer either when the truck was delivered to him or during the first 3 months thereafter or at any time while it was being driven the first 5,000 miles, or during the effective period of the warranty, but that during such time only complaints of minor, inconsequential trouble were made of the truck, calling for only slight repairs or adjustments, which the seller corrected without service charge or cost to buyer therefor, and that they were but minor repairs clearly appears from the fact that the motor company's total expense incurred therefor during the whole 3 months warranty period was only about $6; and that not until in August, 1934, after expiration of the warranty, or some 100 days after its sale and after it had been driven some 12,000 miles, did buyer request that material and substantial repairs be made by the appellant upon the truck, for which he gave seller his writing, recognizing that the warranty period for its free servicing had then expired, agreeing to pay for such repairs made in consideration of his being allowed by appellant to have possession of the truck without

then paying the repair bill of $38.70, for which it was being held.

Further, plaintiff's evidence is to the effect that at no time did the buyer ever claim that the warranty given upon the truck was so breached as to render it worthless, or offer to return it and rescind the contract for its purchase upon such or any ground until after suit was filed against him to recover the $715, owing on the purchase price of the truck, some 7 months after its purchase and when he had used and driven it much longer than the warranty period and for more than 20,000 miles. Further, buyer's agents and witnesses did not deny their overloading of the truck during its use within the warranty period nor did buyer deny that he had not claimed the truck was so defective in parts and workmanship as to be worthless during the warranty period and offered to return it and rescind his contract.

The case having been transferred to the ordinary docket for trial upon the issues presented by the counterclaim and proof heard, upon conclusion of the evidence motion was made by the plaintiff for a directed verdict, which was refused. Also, instructions covering plaintiff's theory of the issues made by the pleadings and evidence were offered and refused, when the court, upon its own motion, so instructed the jury as permitted them to find thereunder that the defendant had the right when sued to elect to rescind his contract of purchase of the truck and return it, even after some 8 months use or misuse of it, and that, if they should find the express warranty upon which the truck was sold had been breached by seller before its expiration period of 3 months or 5,000 miles of driving, they should allow defendant a recovery of such damages as they might find was caused thereby, even to the extent of $785, the amount paid by him on the truck, and $185 for the accessories and equipment placed by him thereon, though it did not instruct upon defendant's right to recover damages of $100 per month, or in any amount, for loss of the use of the truck while it was repossessed and held by appellant for buyer's default for 3 months in making the agreed installment payments thereon.

Under such instructions, the jury returned its verdict in favor of defendant buyer, allowing him not only a recovery of the amount paid by him of $785, but also $185, claimed by buyer as the value of the accessions

placed by him upon the truck, or a net verdict in favor of buyer for the sum of $216.30 more than the amount for which plaintiff had sued him, representing the unpaid balance due upon the purchase price and the service item of $38.70 owing upon the truck sold and long used by him.

The plaintiff complains of this outcome of the action as being a miscarriage of its rights, under the provisions of the conditional sales contract upon which the truck was sold, to recover the balance owing upon its sale price after buyer's default for some 3 months in making the agreed monthly payments thereon, entitling it, under the terms of the contract, to repossess and sell the truck for the satisfaction of such unpaid balance of the debt and also in allowing to defendant the right, upon the claimed ground of breach of warranty, to rescind the contract and recover his payments made upon the purchase price and the value of accessions placed upon the truck, after his long and damaging use of it, without ever having during such time claimed to have discovered that the truck was worthless and within a reasonable time thereafter have offered to return same and assert a claim for damages for the alleged breach of warranty.

We are inclined to feel that this criticism of the instructions as given, in failing to cover such theory, urged by the appellant, as to what were the issues made in the case upon the pleadings and evidence, is meritorious.

Further too, it appears that the court erred in instructing the jury that buyer might recover upon his counterclaim for the claimed value of the accessions of a truck bed and tarpaulin cover which he had made to the truck, where its allowance was in direct contradiction and violation of the terms of the contract and as set out in the note, to the effect that such accessions when made to the truck (title to which was reserved to seller) should remain its property until the truck was fully paid for by buyer, according to the terms of his conditional contract therefor. Neither according to the pleadings nor evidence here heard was any effort or offer by buyer shown or alleged to have been made to return the truck upon the ground of its being worthless by reason of the defective quality of its material and workmanship, breaching the terms of the warranty

given against same, until after he had lost his right to its use and possession on account of his repeated default in payment of the monthly installments becoming due on its purchase price, for which he was then being sued; or, in fact, not until after the plaintiff had repossessed the truck, pursuant to the terms of his conditional sales contract, by reason of such default, and was seeking recovery of the balance owing upon the purchase price by its sale therefor, as by the contract authorized.

We are of the opinion that the buyer was not then in a position to make an election to rescind the contract upon such alleged grounds, but that, in order to do so, it was his duty within a reasonable time after his discovery of the appellant's breach of warranty, if any, in failing to furnish him with the kind and character of truck represented by the warranty as sold him, to have upon such ground offered to return same and, after thus placing the parties in statu quo, have then rescinded the contract, and recovered his payments made upon it.

Such was declared to be the rule with respect to a buyer's right to rescind a contract of sale, for an alleged breach of warranty, in the case of Glover Machine Works v. Cooke-Jellico Coal Co., 173 Ky. 675, 191 S. W. 516, 520, where the court said:

"After it became known that the plaintiff would insist upon the collection of the balance of its purchase money, and that it had virtually abandoned all effort to repair the locomotive so as to make it conform to the contract, if the defendant had desired to keep alive its remedy of rescission, it should have returned the locomotive to the plaintiff, or should have offered to do so. Failing in this, it cannot be permitted, under the principles of law to which we have adverted, to insist upon a cancellation of the contract and a restoration to it of the purchase price which it had paid."

Further, the language of the opinion is:

"The rule, however, is universal, in the absence of stipulations to the contrary, that there are two remedies open to the warrantee upon breach of warranty; they being [1] to return the property and sue for a rescission of the contract, or [2] he

may retain the property and recoup his damages for the breach of warranty in an action by the vendor for the price. Indeed, it is so expressly held by this court in the case of Hauss v. Surran, 168 Ky. 686, 182 S. W. 927, L. R. A. 1916D, 997, where, in the opinion, it is said:

" 'But where the sale is executed and the provision of the contract is not imperative but merely permits the buyer to return the property, he may, at his election, resort to that remedy, or he may retain the article and recoup his damages for the breach of the warranty in an action by the vendor for the price.' "

(See the numerous cases therein cited in support of this rule.)

It thus appears that it was the duty of the buyer, if he desired, upon the grounds that the truck sold him was so defective in its materials and workmanship, against which warranted, as to be worthless, giving him the right to rescind his contract of purchase, to have offered to return same and restore the parties to their former statu quo as a condition upon which he might exercise the right to rescind the contract and thereupon recover the price paid thereunder on the truck. Failing to make such claim as to its being worthless, or to return it, within a reasonable time after finding that the truck sold him was such in its quality and operation as constituted an entire breach of the warranty under which sold, he yet had the right to retain the possession of the truck and counterclaim for the recovery of such damages, as suffered because of the breach, when sued by seller for its purchase price. Vandiver v. B. B. Wilson & Co., 244 Ky. 601, 51 S. W. (2d) 899, 902.

In this case it is also stated that:

"The measure of damage in an action to recover for such defects is the difference between the reasonable market value of the machinery, if it were equipped as provided in the contract, and the reasonable market value in the condition in which it was at the time of its delivery. Van Deren Hardware Co. v. Preston & Son, 224 Ky. 170, 5 S. W. [2d] 1052, 64 A. L. R. 881."

It is to be noted too that here there was an express and limited warranty covering the materials and work-

manship of the truck as free from defects for a period of 3 months or for the driving distance of 5,000 miles, whichever occurred first, and that it only guaranteed the truck against same within such period to the extent of returning the parts found defective for replacement or repair by maker.

In the Vandiver Case, supra, the rule is thus stated with respect to warranties:

> "A warranty expressed in a written contract of sale excludes by implication all inconsistent implied warranties on the same subject. * * * A warranty will not be implied where the contract expressly stipulates against its existence or declares no other warranty is made, or may not be relied upon."

(See numerous cases announcing such rule therein cited.)

Where a contract contains a warranty and provision for a remedy in case of breach, that remedy is exclusive. Wilson v. Nichols & Shepherd Co., 139 Ky. 506, 97 S. W. 18, 29 Ky. Law Rep. 1128; J. I. Case Threshing Machine Co. v. Rose, 191 Ky. 433, 230 S. W. 545. Further, it was held in Bernard Leas Mfg. Co. v. Waller, 36 S. W. 531, 18 Ky. Law Rep. 346, that a purchaser, after being sued for the price of machinery, cannot escape liability therefor by an offer to return the machinery, although entitled to set off damages for its failure to comply with the warranty. An offer to rescind to be available should have been made in a reasonable time after the discovery of the defect.

It is to be noted, in determining the respective rights of the parties in the truck involved, that it was sold under a conditional sales contract entered into in 1934, or subsequent to the enactment by the Legislature of the Uniform Sales Act (Ky. Stats. sec. 2651b-1 et seq.). Under the provisions of the conditional sales contract so adopted by the parties in their negotiations for this truck, the right was reserved to the seller, upon default of the buyer, to repossess the truck and resell it, when so repossessed, for the satisfaction of the unpaid purchase price owing therefor.

As said in General Motors Acceptance Corporation v. Dickinson, 249 Ky. 422, 60 S. W. (2d) 967:

"Prior to the passage of the Uniform Sales Act in this state in 1928 [Acts 1928, c. 148], this court had consistently held a conditional sales contract to be in effect a chattel mortgage and applied to the situation of a default the remedies available to a mortgagee under an ordinary chattel mortgage."

In Cartwright v. C. I. T. Corporation, 253 Ky. 690, 70 S. W. (2d) 388, 390, in further regard to this question, it was said:

"Since the adoption of the Uniform Sales Act [Kentucky Statutes, sec. 2651b-1 et seq.], the effectiveness of conditional sales contracts as instruments securing debts and their terms respecting the reservation of title and repossession of the chattels have been sustained as a general proposition."

See, also, Munz v. National Bond & Investment Co., 243 Ky. 293, 47 S. W. (2d) 1055, and annotated notes 104 A. L. R. 551 et seq.

Here the contract contained an express warranty and expressly stipulated that it was in lieu of all other warranties.

Section 2651b-69, Ky. Statutes, declaratory of rules prevailing at common law, provides in part that:

"In the case of breach of warranty of quality, such loss, in the absence of special circumstances showing proximate damage of a greater amount, is the difference between the value of the goods at the time of delivery to the buyer and the value they would have had if they had answered to the warranty."

By the instruction as given, the jury might well have been misled and confused as to what was the measure of recovery and we are of the opinion it would have been better to have adopted from the quoted section of the statute the appropriate words, or words of like import, to convey its intended meaning.

We are, therefore, in the light of these here applicable principles announced in the cited cases, of the opinion that the court erred in failing in its instructions to cover the plaintiff's theory as to the issues made by the evidence and pleadings, to the effect that, if the defendant had failed, upon discovering that the truck was de-

fective as to its parts and workmanship and that his warranty had thereby been breached, or within a reasonable time thereafter, to offer to return same, if he elected to rescind his contract, he lost such right and was afterwards confined to recovery of damages for the breach.

Also, the truck having been here sold to the defendant upon an express and limited warranty, his right to recover damages for its breach was limited to his complying with the conditions named in the warranty, which it does not appear the buyer here undertook to comply with.

We are, therefore, led to conclude, from a careful study and consideration of the whole record, that the appellant has failed to have a fair trial upon the whole case, and for such reason the judgment should be, and it is, reversed and the case remanded for a new trial consistent with this opinion.