HOME FINANCE COMPANY, Appellant,

v.

W. B. FRAZIER, Appellee.

Court of Appeals of Kentucky.

June 5, 1964.

Sutton & Martin, Corbin, for appellant.

Herman Tye, Barbourville, for appellee.

DAVIS, Commissioner.

Appellee W. B. Frazier obtained jury verdict and judgment for $2,000 in Knox Circuit Court against appellant Home Finance Company, based on his claim that appellant had wrongfully converted two Ford trucks which appellee had purchasd on conditional sales contracts. We sustained appellant's motion for appeal. KRS 21.080; RCA 1.180. Our conclusion in the case makes it unnecessary to enumerate the various points argued in briefs.

Appellee purchased two Ford trucks from Cumberland Ford Motor Company; one of them was bought May 8 and the other on May 22, 1956. Appellee executed a conditional sales contract for each truck, substantially identical except as to dates and amounts. Appellant purchased the conditional sales contracts; appellee made numerous payments to appellant.

Each conditional sales contract provided for eighteen deferred monthly payments. It is conceded that appellee was often delinquent in his payments, and that he was delinquent in his account on November 15, 1957, at which time appellant repossessed both of the trucks. Appellee was not present in person at the time of repossession of either truck (they were taken into possession by appellant's agent at separate places). However, there was no breach of peace or other disturbance incident to the repossessions. Each of the conditional sales contracts specifically provided for repossession rights in the appellant. On December 19, 1957, appellant sold both trucks at auction, after notice to appellee; appellee attended the sale, but made no bid.

Appellee communicated with appellant's agent the day after the repossessions, and sought permission to pay the account to a current basis, but this was refused. The day after that appellee claims he proposed to pay the account in full, but this offer was rejected also. In this respect, there is contrariety in the evidence; appellee claims that he offered to pay the sum he estimated remaining due, but that appellant demanded a substantially higher amount. On the other hand, appellant denies that appellee made any offer to pay in full. According to the books of appellant the appellee owed $1,062.46 on one truck and $854.51 on the other at the time they were repossessed. It is shown that the truck on which the larger sum was owed brought $850 when sold by appellant, leaving a deficiency of $212.46. The other truck was sold for $535, resulting in a claimed deficiency of $319.51. Appellee did not present evidence discrediting the accounting of appellant; neither did his evidence truly dispute the asserted balances against him.

Appellee had equipped each of the trucks with a bed suitable for handling coal, stone and gravel; hoists sufficient to dump the beds were affixed to the vehicles by appellee. When the trucks were repossessed this added equipment was on them. On November 29, 1957, appellant's attorney wrote appellee and advised that appellant made no claim to the dump beds. In the letter appellee was informed that he could "pick them up" at any time he desired. However, appellee took the position that he had no obligation to obtain the beds (which were then in Pineville). Appellant apparently took that view too, for it subsequently caused them to be returned to appellee by leaving them in a field on his premises. Appellee stated that when these beds were returned he discovered that "the power take off and universal joints and drive shafts" were missing;

also, he asserted "the pump on one of them was broke."

Two days before the sale date appellee filed suit charging illegal conversion of the trucks and their appurtenant beds. He sought damages, compensatory and punitive, in the aggregate amount of $10,100, or the return of the property. The complaint sought a restraining order to prevent the proposed sale, but this remedy was not pursued; no restraining order was issued.

One of the trucks had been in a minor accident on the day it was repossessed. Appellee alleged that he had collision insurance on the truck, and that either appellant or the insurance company should be required to pay the damages to the truck by reason of the accident; the insurance company was not made party to the suit, nor was there any showing of the extent of the collision damage. Appellee testified that the insurance was $100 deductible, so that no liability would have attached to the insurance company until the damage exceeded $100.

Appellant filed answer and counterclaim, by which it alleged appellee's default on the conditional sales contracts, the exercise of its right of peaceful repossession, the auction sale of the trucks, and sought recovery of $531.97 as the aggregate of the deficiencies between the sales prices of the trucks and the amounts due from appellee.

■ Appellee contends that since he had been permitted to make late payments on several occasions the appellant waived any right to repossession. This argument overlooks the fact that the contracts specifically provide, "Any action to enforce payment hereunder or any indulgences or rearrangements granted the Purchaser shall not be a waiver of or affect any rights of a holder hereof." Appellee quotes 47 Am. Jur., Sales, § 899, to support his argument. However, he failed to observe or quote that portion of the cited text noting that the parties may validly agree that the acceptance of delayed payments shall not waive strict performance. We hold the quoted contract provision valid.

■ Appellee maintained that appellant had no right to repossession except by court order. The contrary rule is too well known to admit of argument. General Motors Acceptance Corp. v. Dickinson, 249 Ky. 422, 60 S.W.2d 967; 16A Ky.Dig., Sales, ⬮479(1).

■ Neither may the appellee complain as to the beds and other additions which he had placed on the trucks. This question was resolved adversely to appellee's contention in Black Motor Co. v. Foure, 266 Ky. 431, 99 S.W.2d 177; 43 A.L.R. 2d 819, § 3. Each conditional sales contract contained this language:

"* * * that all equipment, tires, accessories and parts shall become part of the Car by accession; * * *"

Under these circumstances, the appellee could not frustrate appellant's right of peaceable repossession by the expedient of placing an accessory on the vehicle.

No effort was made to show bad faith or lack of diligence in the conduct of the sales after repossession. As noted, appellee was present at the sale; he made no bid. Neither did he express any dissatisfaction with the sale or the manner of conducting it.

■ The complaint sought punitive damages, but that issue was not specifically submitted by the instructions. Punitive damages could not have been allowed in the circumstances shown here. Home Finance Co. v. Ratliff, Ky., 374 S.W.2d 494.

■■ No illegal action of appellant was proved; the appellant's motion for directed verdict should have been sustained. However, as appellant did not file motion for judgment notwithstanding the verdict as provided by CR 50.02, we remand the case

**94**

for new trial, with direction that if the evidence on another trial is substantially the same as upon the first, there shall be a directed verdict against recovery by appellee and allowing appellant recovery upon its counterclaim.

The judgment is reversed for proceedings consistent with this opinion.